HENRIETTA C. KERR vs. EDWARD FARISH et ux.

1. EJECTMENTS: *Muniments of title. Evidence. Case in judgment.*
   Mrs. K., widow of J. K., sued in ejectment for eighty acres of land, claimed under her husband, who held a patent from the state. She derained title from the United States to L., by whom she claimed the land had been conveyed to the state for the sinking fund, but no deed could be produced. She presented the official list of lands belonging to the sinking fund, upon which list was entered the land in controversy and other lands "acquired from Lacoste." Opposite the land in controversy was a pencil memorandum "sold to Kerr." She also offered the official report of the commissioner of the sinking fund, showing that the land was sold to Kerr; which were excluded. *Held*, that these documents do not stand upon the footing of private writings, but they are what are styled "official registers," and as such entitled to an extraordinary degree of confidence, and should have been admitted, and left to the jury with these cautions, that no mere intention on the part of L. to convey the bonds in question, and no impressions, however strong that he or any

state official may have entertained that it had been conveyed, nor any written memorandum to that effect, was sufficient.

2. SAME: SAME: *Proofs of possession.*

As against a mere intruder without color of title a plaintiff in ejectment may recover upon the strength of his former possession without deducing his own title, unless the intruder has held possession long enough to bar the plaintiff's right of entry, and provided the plaintiff has not theretofore abandoned his possession *sine animo revertendi.*

ERROR to the Circuit Court of *Rankin* County.

Hon. WM. M. HANCOCK, Judge.

The facts necessary to a full understanding of this case will be found in the opinion of the court.

The following errors are assigned, to wit:

1. The court erred in overruling plaintiff's motion for a new trial.

2. In ruling out certain evidence offered by plaintiff, to wit, the official list of lands and the journals of the house of representatives intended to supply deed of Sidney Lacoste to the state.

3. In refusing 7th and 8th instructions asked by plaintiff, and in giving instructions asked by defendant.

*Harris & George*, for plaintiff in error:

It becomes necessary to supply the lost deed by extrinsic evidence. Was the title in the state when the patent issued to Kerr? It is shown that the title was in Lacoste. Did he convey to the state? The sale to Kerr by the state was in 1851, and a public report of the sale was made of it at that date by the commissioner. The state assumed to own the land through Lacoste. She could only have a right to the patent by a conveyance from Sidney Lacoste. Bell states that in his recollection the deed from Lacoste did not contain the lot 1, sec. 28. It is plain that if it did not it was a clerical omission, made demonstrable by the coincidences, and the question is: Is the recollection of Bell to weigh against the official acts of the state officers, acting with the documents before them, in selling and making the deed? It was not a question of veracity but *one of memory* opposed to all the

probabilities of the case. The *onus* was on defendant to prove that the title was not in the state, and he has clearly failed to do it. The court erred in ruling out, as evidence, the official documents. Greenl. Ev. (Redf. ed.), pp. 470 to 498. Another view of the case is this : Farish was a mere intruder, without color of title ; Kerr had been in possession, actual and constructive, since 1851. 31 Barb. 511 ; 2 Saund., 111 ; Jackson *v.* Hazen, 3 Johns., 22 ; Hicks *v.* Steigleman, 49 Miss., 373 ; Jackson *v.* Harden, 4 Johns., 202–216 ; Smith *v.* Sorrilland, 10 Johns., 338.

*Mayers & Lowry*, for defendant in error :

It was admitted that the title to the land was in Lacoste, but it is denied that he ever conveyed to the state. That was the main question in the court below. To prove title, plaintiff introduced Gen. Jo. Bell, who says he had examined the deed from Lacoste to the state, and the land in controversy was not embraced in it. He knew the lands embraced in the deed, etc. No record of such conveyance was offered, but an attempt was made to supply that link, but it failed. Plaintiff then attempted to show from an old book, in the handwriting of the commissioner of the sinking fund, that the land in controversy was in a list in that book purporting to have been bought of Lacoste by the state, and also, by the journals of the house of representatives, that the state treasurer had reported a sale of the land in controversy to James Kerr, which evidence was properly ruled out by the court below.

The state can claim no more than an individual when she deals in lands, and must stand by the same rule of evidence. Lacoste owed the sinking fund, and it may have been the intention of the parties to include this land in the deed ; if so, the state had her remedy to file her bill and reform the deed.

The acts of her officers cannot affect the rights of Farish. It has been uniformly held that the patents confer no title *unless the government had title to convey.*

A patent from the United States does not affect a preëxisting title in a third person. City of N. O. *v.* De Armes, 9 Peters, 223 ; Watts *v.* Hil-luk-homa, 7 S. & M., 363.

A patent is void if the state had no title. Polk's Lessees *v.* Wendael, 9 Cranch, 87; 5 Wend., 293. Where the state has no title the validity of her patent may be contested at law. Patterson *v.* Winn, 11 Wend., 380.

CHALMERS, J., delivered the opinion of the court:

Mrs. Kerr, widow of James Kerr, brought ejectment against Farish to recover possession of lot 1, sec. 28, t. 5, r. 1 east, eighty acres in Rankin county. She claimed title under her husband, who held a patent from the state of Mississippi. She successfully derained her title from the United States government down to one Sidney Lacoste, by whom she claimed that the land had been conveyed to the state of Mississippi in payment of a debt due by him to the sinking fund previous to 1851. No deed from Lacoste to the state could be produced, but she alleged that one had been lost without having been recorded.

Whether such deed was ever made is one of the main points at issue between the parties, and the action of the court in rejecting the testimony by which she sought to establish it constitutes the principal error assigned. It being conceded that Sidney Lacoste once had a perfect title, and that the state of Mississippi thereafter conveyed the land to plaintiff's husband by letters patent, which recited that said land belonged to the sinking fund, it was incumbent upon plaintiff to show that Lacoste had conveyed it to the state for the benefit of said fund. Unable to produce the deed, which she alleged had been lost, plaintiff offered in evidence the official list of lands belonging to the commissioner of the sinking fund of the state, which list was, by M. L. Holland, the state treasurer and official custodian of said list, and by J. D. Freeman, ex-attorney general, identified as being the official list of said lands. Upon this list was entered in a handwriting identified as that of Samuel Matthews, former commissioner of the sinking fund, the land in controversy, together with much other land, all of which was marked on the list " *acquired from Lacoste.*"

Opposite the land in controversy was a pencil memorandum, "sold to Kerr."

The evidence was offered in connection with proof proposed to be made of acts of ownership by the state. It was by the court excluded. She then offered in evidence the official report of Robert Josselyn, the successor of Matthews as commissioner of the sinking fund, made to the legislature of the state in 1852, in which he reports that he has sold this land, with others, to James Kerr, partly for cash and partly on credit.

This evidence was offered to show the claim and exercise of acts of ownership over the land by the state, and in connection with the recitals of the patent issued to Kerr in 1865, setting forth that the land had been theretofore purchased from Josselyn, commissioner, by Kerr, and that said patent was then issued by virtue of said sale, and of the payment then made of the balance of the purchase money in full. This evidence, also, was excluded. Was this action of the court below correct? It is supported by counsel for appellee, and was doubtless rested by the court upon the ground that the introduction of the testimony was an attempt to prove title in the state by its own acts alone, and was equivalent to establishing the doctrine that the officers of the state could vest title in her by such acts.

We do not understand the evidence to have been offered for any such purpose. The plaintiff had given notice in her written bill of particulars of her title, filed in obedience to the demand of defendant, that one of her muniments of title was a lost deed from Sidney Lacoste to the state, which lost deed she proposed to establish by parol proof.

She did prove by the witness Bell that he had seen a deed, executed about the proper time, from Sidney Lacoste to Josselyn, the commissioner of the sinking fund, conveying various lands in Rankin county. But Bell thought that the land in controversy was not therein embraced. This deed, Bell says, was never recorded.

For the purpose of showing that said lands were in fact embraced therein, the foregoing testimony was offered. The

documents adduced do not stand upon the footing of private writings. They are what Mr. Greenleaf styles " official registers, or books kept by persons in public office, in which they are required, whether by statute or by the nature of their office, to write down particular transactions occurring in the course of their public duties and under their personal observation. *, * * * The extraordinary degree of confidence, it has been remarked, which is imposed in them, is founded principally upon the circumstance that they have been made by authorized and accredited agents, appointed for the purpose, but partly, also, on the publicity of their subject-matter. Where the particular facts are inquired into and recorded for the benefit of the public, those who are empowered to act in making such investigations and memorials are in fact the agents of all the individuals who compose the state, and every member of the community may be supposed to be privy to the investigation. On the ground, therefore, of the credit due to agents so empowered, and of the public nature of the facts themselves, such documents are entitled to an extraordinary degree of confidence." (Greenl. Ev. § 483, *et seq.*)

We think, therefore, that the testimony should have been admitted, and the jury left to decide whether it was sufficient to overcome the testimony of Bell that the land in controversy was not embraced in the deed.

It would be a question of memory and not of credibility. The jury at the same time should be cautioned that no mere intention on the part of Lacoste to convey this particular piece of land was sufficient, nor any impression, however strong, which both he and the state officials may have entertained that it had been conveyed, nor any written memorandum to that effect made by the officers of the state. If the land was omitted by mistake, the remedy is in another forum and by a different proceeding.

The next error assigned is the granting of charges in behalf of the defendant, and the refusal of three of those asked by the plaintiff.

These charges, though some of them are not aptly drawn,

raise the question as to whether plaintiff was entitled to recover upon proof of previous possession in herself and husband for ten years, without deraining title, in the absence of any show of title in defendant.

It is now well settled, both in this state and elsewhere, that, as against a mere intruder without color of title, a plaintiff in ejectment may recover upon the strength of his former possession, without being put to deduce his own title, unless said intruder has held possession for a period sufficiently long to bar the right of entry, and provided, further, that the plaintiff has not theretofore abandoned his possession *sine animo revertendi*.

In every such case it would perhaps be a mixed question of law and fact as to whether the defendant was an intruder without color of title; nor do we express any opinion as to what effect his failure to furnish a bill of particulars of his claim of title, when called upon, as occurred in this case, would have upon such an issue. Hicks *v.* Steigleman, 49 Miss., 377; Clute *v.* Varis, 31 Barb., 511; Jackson *v.* Hazen, 3 Johns., 22; Jackson *v.* Harden, 4 Johns., 202; Smith *v.* Lovelland, 10 Johns., 338.

The action of the court, not being in accordance with these views, was erroneous.

Judgment reversed and cause remanded.