MARTHA L. DINGEY ET AL. v. A. J. PAXTON ET AL.

1. EJECTMENT. *Claim by heirs. Possession of ancestor. When sufficient evidence of title.*
   Where the plaintiffs in an action of ejectment claim title as the heirs of an ancestor who died in possession of the land, such possession is *prima facie* evidence of a seisin in fee, and is sufficient to enable them to recover against a mere intruder or one claiming under a title shown to be void.

2. TAXES. *Assessment of land. Void for uncertainty, when.*
   An assessment of lands for taxation as "143 acres in N. E. ¼ of section 24, township 17, range 7 west," is void for uncertainty, it being impossible to say which 143 acres of the section are delinquent.

3. TAX-SALE. *Under abatement act. Proof of sale to State.*
   Proof of the fact that a certain tract of land was in 1873 assessed to the State is not sufficient evidence that it was "held or claimed by the State under a sale for taxes due prior to the year 1874, so as to bring it within that class of lands which the "Abatement Act" authorized to be sold on the 10th of May, 1875. For if such sale to the State was made prior to the adoption of the Code of 1871, it could only be proved by the deed from the tax-collector, or if made subsequently it could only be proven by the list of lands sold.

4. TAX-TITLE. *Through act of April 11th, 1876. Limitation therein.*
   The act of the Legislature approved April 11th, 1876, entitled "An act to abolish the office of liquidating levee commissioner, and to provide for the redemption of lands in the Liquidating Levee District, and for other purposes," expired by its own limitation, on the 1st of January, 1878, in so far as it authorized the auditor of public accounts to sell lands which, prior to the year 1876, had been sold to the State for taxes.

5. SAME. *Act of April 11th, 1876, construed. Its limitation of actions. Its curative effect. Constitutionality.*
   Sect. 6 of the act above referred to provided that "all lands lying within the levee district, which have been heretofore struck off or sold to the State," or

to any of the levee boards or the levee commissioner, " under the provisions of any revenue law of this State, or of any levee law, and which are now held or claimed by the State, or by any of said levee boards, or by said commissioner, may be redeemed at any time prior to the first day of November, 1876," upon certain prescribed terms. Sect. 7 provided that, "after the first day of November, 1879, and before the first day of January, 1878, the auditor may sell and dispose of such lands to any person desiring to purchase the same, on the same terms as are provided for the redemption thereof in the sixteenth section of this act." By sect. 8 it was declared that "all deeds made by said auditor under the provisions of this act shall be *prima facie* evidence of paramount title, and no suit or action shall be brought in any court of this State to vacate or impeach any such deed, or to maintain any title or deed antagonistic thereto, unless the same shall be brought within one year next after the date of such deed; and after the expiration of one year after the date of such auditor's deed the same shall be held and deemed by all the courts of this State to be conclusive evidence of paramount title, and upon which actions of ejectment and all possessory actions may be maintained." By sect. 13 it was provided that "if any of the lands mentioned in this act shall not be redeemed or purchased as herein provided, on or before the 1st day of January, 1878, no further time for redemption shall be allowed, and the title thereto shall be vested in the State of Mississippi; and no action in law or equity shall be maintained in any court of this State, either against the State or any grantee or donee from the State for the recovery of any such lands." The above quoted provisions have a twofold operation : (1) they prescribe a short period of limitation after which no suit shall be brought by the owner to recover the lands mentioned; and (2) they give to the conveyances under the tax-sales a conclusive effect as evidence, thereby cutting off all inquiry into the existence of irregularities or defects and thus operating as a curative law. And viewed in either light they are in excess of legislative power and violate those fundamental rights of property which are protected by that clause of the Constitution which declares that "no person shall be deprived of life, liberty, or property, except by due process of law." *Power* v. *Penny*, 59 Miss. overruled. CAMPBELL, C. J., dissented.

6. SAME. *Purpose of the Act of 1876. Wherein unconstitutional.*

The evident purpose of the act referred to was to secure the title claimed by the State, or through it, against all attacks by the owner of the land, upon any ground, after the expiration of the time limited; and in so far as it attempted to validate tax-titles which were void under the law in force before its enactment, it is unconstitutional and void, because it would, without " due process of law" transfer the ownership of property. CAMPBELL, C. J., dissented.

7. SAME. *Due process of law, what. Legislative discretion.*

What is due process of law in proceedings for the collection of taxes is left by our Constitution largely to the legislative discretion. The machinery may be simple and the proceeding summary, but the latter must be a proceeding which is to be, and not which has been taken. The tax-payer must have an opportunity to comply with the requirements of the law; and the State, and not he, must be the actor.

8. SAME. *Limitation of action and destruction of title distinguished. Legislative power.*

The power of the Legislature to prescribe within what reasonable time one having a mere right of action shall proceed is unquestionable; but there is a wide distinction between that legislation which requires one. having a mere right to sue to pursue the right speedily, and that which creates the necessity for suit by converting an estate in possession into a mere right of action, and then limits the time in which the suit may be brought.

APPEAL from the Circuit Court of Washington County.

Hon. B. F. TRIMBLE, Judge.

Martha L. Dingey and others brought this action of eject-ment, on November 26, 1880, to recover of A. J. Paxton, the possession of a certain tract of land.

On the trial, the plaintiffs introduced in evidence a deed from Hewett, Norton & Co., dated October 7, 1869, which for a valuable consideration conveyed to H. C. Dingey the land in controversy. They then proved that they were the heirs of H. C. Dingey, and that he died 1873 in possession of the land.

The defendant then introduced in evidence the list of lands sold to the State for taxes on May 10, 1875, which embraced the land sued for. He also adduced in evidence a deed from the auditor of public accounts, dated August 26, 1879, con-veying the land to him. The plaintiffs then proved that they had paid the taxes on the land for the years 1872 and 1873. The proof further showed that Paxton, after receiving his deed from the auditor, immediately took possession of the land, which was at the time in possession of a tenant of the plain-tiffs, who then yielded a partial possession to Paxton, and sub-sequently attorned to him. The assessment-roll of 1873 was in evidence and showed that this land was last year assessed to the State. The verdict and the judgment were for the de-fendant, and the plaintiffs appealed. The other facts of the case necessary to be known are · stated in the opinion of the court.

*J. R. Yerger*, for the appellants.

There can be no question of the title of H. C. Dingey origi-nally to the land, nor of the descent cast upon the plaintiffs by

the death of their ancestor. The defendants, when called upon
to show their title, do not exhibit any in opposition to it.
Their sole reliance is upon a tax-deed from the State of Mis-
sissippi, and this deed is, as will presently be shown, abso-
lutely void. Upon the doctrine of descent cast by title and
possession of ancestor the following cases are cited : *Hicks* v.
*Steigleman*, 49 Miss. 377 ; *Lum* v. *Reed*, 53 Minn. 73 ; *Kerr*
v. *Farish*, 52 Minn. 104 ; *Spears* v. *Burton*, 2 Geo. 547 ;
*Hanna* v. *Renfro*, 3 Geo. 125. The deed from the auditor to
Paxton is clearly void. It is a sale in May, 1875, for the
taxes of 1874. The tax of 1872 and the tax of 1873 were paid,
and the only taxes due upon the land were the taxes of 1874.
For these taxes the proper sale day was the first Monday of
February, 1875, and not in May, 1875. "Lands on which
the taxes were not paid for the year 1874 were to be reported
as delinquent on or before the second Monday of January,
1875, and were to be sold on the first Monday of February."
*Gamble* v. *Witty*, 55 Miss. 27. "The State acquired no ti-
tle to the land in controversy by the sale for taxes on May 10,
1875, because the act of March 1, 1875, did not authorize the
sale of land on which the taxes had been paid for all the years
prior to 1874." *Gamble* v. *Witty*, 55 Miss. 27. On the ef-
fect of a void deed see 5 Kan. 498 (*Taylor* v. *Mills*) ; Black-
well on Tax Tit. 406 ; *Corbin* v. *Hill*, 21 Iowa, 70,72. This case
in Kansas, (*Taylor* v. *Mills*), where "land not taxable was
levied upon and sold for taxes held that the tax deed was
absolutely void, and that therefore the Statute of Limitations
did not run in favor of the holder of the deed from the date
thereof and against the original owner of the land or his
grantee." This is a very important case and explains *Lef-
fingwell* v. *Warren*, 2 Black, 397. Of course the defend-
ant was in the occupation — the possession — of the land in
controversy. But it is an illegal occupancy — possession had
not been abandoned by the heirs of Dingey ; on the contrary,
the evidence of Paxton shows an absolute illegal ouster, or
faithless conduct on the part of their tenant. I will not enter

into a disquisition of what is "color of title,"—a color of title coupled with possession in the abstract or the general effect of void deeds and possession,—but simply assert this to be the rule of law: Upon the death of the ancestor legal presumption of possession is in his heirs, and a tax-deed null and void relied upon in defence is certainly no further color of title than as showing what land the defendant claimed and the length of time claimed. In such a case the heirs at law are *prima facie* entitled to ten years' time within which to institute their suit for the recovery of possession, at least unless it approximately appears that they intended to abandon possession. The instructions granted in favor of the defendants are the reverse of this rule. If the tax-title is valid, then the holder can sue in twelve months, two years, or the time of limitation provided in the deed, and recover. If valid, however, he acquires possession, he can defend under it. But if void he cannot recover or gain possession affirmatively under the deed. If void, and he is in possession, it is only "color of title" to show what is claimed, and the length of time of the claim. No man can ever recover under a void deed; no man can defend under a void deed; he can show it as evidence of the boundaries he claims and the length of time he has claimed the same, subject to the broad rule of the Statute of Limitations relative to length of time possession has been had. *Hicks* v. *Steigleman*, 49 Miss. 377, where, quoting the Code, it is held that where a defendant relies upon possession alone, she must show her possession to be adverse, and that possession to have continued ten years, in order to ripen into a title under the Statute of Limitations. On the subject of limitations see the case of *Grosbeck* v. *Seeley*, 13 Mich. 329. The court says: "This statute does not purport to be a limitation law. It is designed by its express terms to deprive persons of their titles whether in possession or not, by mere lapse of time. If the proceedings to sell for taxes were illegal, no lapse of time can change their character, and they can never therefore become legal. If the tax-purchaser

obtains possession and holds it until protected by a limitation law, he then becomes safe, not because his tax-title is any more regular, but because the holder of the better title has become incapable of asserting it," etc.   *Baker* v. *Kelly*, 11 Minn. 480, is a strong case, and the attention of the court is directed to it.   The second and third and fourth instructions are relied upon as showing that the color of title, under a void deed, is ripened by time into a perfect title.   And among other things claimed as law under these instructions is the doctrine that a deed to the State absolutely void will, in twelve months from the date of a pretended sale, ripen into a perfect title. Such a doctrine of construing a tax-title is a forfeiture of the severest character, it is subversive of the rules of this State as expounded in a number of cases, notably *Hopkins* v. *Sandridge*, 31 Miss. 669.   The court can notice the peculiarity of the assessment-roll.   "In sect." etc., the description is vague and uncertain.   Notice, also, the discrepancy as to ownership.   Was it owned by the State, or was the owner unknown?

*R. B. Campbell*, for the appellees.

It will be remembered that the sale was made to the State on the 10th day of May, 1875.   Sect. 9, p. 14, of the Laws of 1875, required sales of land that were delinquent anterior to the year 1874, and on which the taxes of 1874 had not been paid, to be sold on the second Monday of May, 1875 ; and sect. 13, p. 16, of the Laws of 1875, provides that " after one year from day of sale of any such lands, whether to the State or to individuals, if the same remain unredeemed, shall vest title absolutely in the State or in said individuals."   The land having been sold on a day authorized by law, as shown by the certified copy of the list of lands, the title in the State was *prima facie* valid, and it was incumbent on the appellants to show some fact to rebut its *prima facie* validity.   They sought to do this by showing that the taxes of 1872 and 1873 had been paid, and, therefore, the sale was made on a wrong day, in that the land was not delinquent for taxes anterior to the

year 1874. I hold that the proof of payment of taxes for the
years 1872 and 1873 is not sufficient to rebut the *prima facie*
title in the State ; and that nothing short of proof that the
taxes of all the years anterior to 1874, as far back, at least, as
1866, were paid, will be sufficient. The Act of 1875, p. 11,
sect. 1, abated all taxes prior to the taxes of 1874, and this
was amendatory to the acts of 1874, p. 49, which had abated
all taxes that had accrued anterior to the year 1866, and which
allowed the owner to redeem his land by paying all taxes that
had accrued from 1866 up to 1874. And the act of 1875 con-
demned such land to be sold on the second Monday in May,
1875, if the taxes of 1874 were not paid. If the land had
been delinquent in 1870 or 1871, and was claimed as forfeited
to the State, or any one of the levee boards, and through
some inadvertence on the part of the tax-collector, the taxes
of 1872 and 1873 were paid and collected, and the taxes of
1874 were not, the proper day for a sale for non-payment of the
taxes of 1874, was the second Monday of May, 1875 ; because
the land had been delinquent and was claimed by the State for
the taxes of 1870 or 1871. The law presumes that the officer
did his duty, and that he would not have made the sale in
question on the second Monday of May, 1875, if the land sold
was not at the time claimed by the State for taxes due anterior
to 1874. I say that where the law names a day on which a
certain class of lands should be sold, and provides that the list
of sales shall be *prima facie* evidence that the land sold was
of that class, it is incumbent on him, who attacks such a sale,
to show that the land sold was not of such a class, and, there-
fore, it devolved on the appellants to show that this land was
not claimed by the State for the taxes of any of the years
prior to 1874. This seems to be the law as laid down in
*Gamble* v. *Witty*, 55 Miss. 26. Taking the statute to be
constitutional, I can see no reason why plaintiffs were not
barred of this suit, unless it be said that the provision in
sect. 7, p. 170, in the Acts of 1876, authorizing the audi-
tor, " after the first day of November, 1876, and before the

first day of January, 1878," to sell said lands, is a limitation of the auditor's power to sell between those dates, and, therefore, having sold after January, 1878, the statute does not apply.  I do not consider it as limiting the auditor's power to sell within the dates named, but as extending the time in which the owner might redeem until the first day of January, 1878, coupled with the power in the auditor to sell to any other person in the meantime.  The verbiage of sect. 13, p. 172, Acts of 1876, seems to justify this construction. The effect would be, that if the auditor sold any of said lands before January 1, 1878, then the owner could not redeem it, but that if he did not sell said land until January 1, 1878, then, up to that date, the owner could redeem.  Whether this construction be right or wrong, sect. 8, of the same act, speaks of the deed made by the auditor under " this act," as barring a suit after the expiration of one year from its date.  The words, " this act," cover the sections therein as a whole, and, therefore, includes said sect. 13, which authorized a sale by the auditor after January 1, 1878; or rather makes the title conclusive in the State or its vendees. It was urged in the court below that the act of 1876 (Laws 1876, p. 170), was unconstitutional.  Is this true?  I shall argue that the Legislature could have passed such a law without violating the Constitution, regarding future sales, and, therefore, it could make such a law without violating the Constitution to apply to sales already made.  The Legislature can pass any law that will be valid and binding, unless restrained by the Constitution of the State, or limited by that of the United States.  In so far as it does not encroach upon the judicial or executive branches of the government, the Legislature partakes somewhat of the omnipotence of Parliament. There is nothing in the Constitution restraining the passage of such a law, as we have invoked, that has ever passed under our observation.  It seems to me that the Legislature can say that a sale of land for taxes after a given time shall be conclusive evidence of title where there is a valid assessment and sale

in default of payment of taxes, without violating the Constitution. Under such a law, it seems to me that the owner, by failure to take steps to redeem or recover his land within the given time, would be held to acquiesce in the validity of the title. Such a law, while regulating the rules of evidence, would be in the nature of a law " of repose." That the Legislature cannot constitutionally provide that a tax-deed shall be in itself conclusive evidence of title, at the time it is made, is settled by authority ; but I have been unable, with the means at hand, to find any authority denying the power of the Legislature to provide that such a deed may become conclusive in course of time. It is the time that makes the conclusive title. Such a law would have no tendency towards " confiscation " of a citizen's property. There is but a slight distinction between a law of this kind and a law regulating remedies. One says to the suitor, that after a given time you cannot impeach the deed. It is conclusive evidence, the other says, that after a given time you cannot maintain your suit, because you are barred. What injury is there to any one for a law to say that a deed after a given time shall be conclusive if he has no remedy whereby he can attack the deed? Without a remedy, is to be without the power to use evidence. They go hand in hand. When a law says no suit shall be brought after a given time, it, in effect, says the evidence is conclusive that the suitor has no right or title, but that the defendant has the title. I maintain, then, that such a law would not be unconstitutional. But, if I am wrong, then I say that so far as the law referred to relates to the remedy and is a statute of limitations, it is constitutional, especially as defendants were in possession of the land in controversy for the time prescribed, under a deed from the State. This court has repeatedly decided that, after one year, no suit shall be brought to recover property sold by any administrator, executor or guardian, by virtue of a decree by any Probate Court of this State, on account of the invalidity of such sale. The law which thus restricted suits, in the cases mentioned, was held

to be constitutional, even against infants, who had no notice
of " such sale," and that it applied to past as well as pros-
pective sales.  The main reason that laws regulating " tax
sales " are viewed with such suspicion, I take for granted,
is that they are the exercise of sovereignty, without the
consent of the owner, and without any element of contract.
But it seems to me that this reason fails of any effect, if the
above law is constitutional against " infants " without notice,
who, in truth and in justice, many times cannot consent to
sale.  See *Summers* v. *Brady*, 56 Miss. 10, and cases cited.
In one case it is true the sale is made under judicial super-
vision, and in the other by an officer, ministerial in char-
acter ; yet the time specified in which to bring suit in both
cases, was provided by the Legislature.  That such laws
are favored, see *Pillow* v. *Roberts*, 13 How. 597 ;
*Leffingwell* v. *Warren*, 2 Black, 99 ; Blackwell on Tax
Tit., 585, *et seq.*  One point exhibited in this record,
not argued in the court below, I propose to call attention
to without any argument, and that point is this : The land
in controversy was described on the assessment-roll, thus :
" In N. E. $\frac{1}{4}$ Sec. 24, T. 17, R. 7, 143 acres."  It was de-
scribed in the certified list of sales to the State, thus :
N. E. $\frac{1}{4}$ Sec. 24, T. 17, R. 7 W. 143 acres," and in the
auditor's deed, thus : " N. E. $\frac{1}{4}$ Sec. 24, T. 17, R. 7 W·
160 acres " (more or less in the body of the deed).  The
description is sufficient as assessed.  If not it was such a de-
fect as could be cured by the Legislature, and this it has
done by the several acts referred to.  There was no objection
to the " deed from the State " as evidence because of any
variance between the description of the land in it and the
assessment-roll.  At any rate, at the date of the " auditor's
deed " such title as the State had passed to the defendant,
A. J. Paxton, Jr., and by sect. 8, p. 170, Laws 1876, the
" auditor's deed " was *prima facie* evidence of paramount
title, and it devolved on the appellants to show that the whole
of the " N. E. $\frac{1}{4}$ " of sec. 24, T. 17, R. 7 W., was not owned

by the State.   But assume that I am wrong in all that I have
written, still the judgment is right and should not be dis-
turbed, for this reason : the appellants failed to make out such
a title as the law requires to entitle them to recover.   The
" tax-deed " to defendant was " surely color of title," and
he entered into possession of the land peaceably.   The plain-
tiffs have not shown a clear paper title, nor a possessory title,
sufficiently long to become a title, nor have they shown that
defendants were intruders.    I believe it is settled that a
plaintiff in ejectment can recover on the strength of his former
possession, only as against an intruder ; but where a tenant
is in possession, under " claim of title," with " color of
title," he is not an intruder, and it forces proof from the
plaintiffs of a superior title, outside of prior possession, be-
fore they can legally recover.   See *Smith* v. *Lorillard*, 10
Johns.  337 ;  *Linn*  v.  *Reed*,  53  Miss.  72 ;  *Hicks*  v.
*Steigleman*, 49 Miss. 377 ; *Kerr* v. *Farish*, 52 Miss. 101.
The case of *Johnson* v. *Futch*, 57 Miss. 73, does not militate
against this view.

COOPER, J., delivered the opinion of the court.

The possession of the *locus in quo* by the ancestor of the
plaintiffs under claim of title, is *prima facie* evidence of a
*seisin in fee*, and is sufficient to enable them to recover against
a mere intruder or one claiming under a title shown to be
void.   *Epsey* v. *Lane*, 2 Serg. & R. 53 ; *Jackson* v. *Murray*,
5 Cow. 200 ; *Smith* v. *Lorillard*, 10 Johns. 338 ; *Jackson* v.
*Hargen*, 2 Johns. 22 ; *Weidman* v. *Hubbell*, 1 Cow. 613 ; *Lum*
v. *Reed*, 53 Miss. 72 ; *Hicks* v. *Steigleman*, 49 Miss. 377 ;
*Kerr* v. *Farish*, 52 Miss. 101 ; *Johnson* v. *Futch*, 57 Miss. 73.

The lands on the original assessment-rolls were listed to the
State, and described as one hundred and forty-three acres in
the northeast quarter of section 24, township 17, range 7
west ; on the copy of the roll in the hands of the collector,
the words " unknown owner " had been erased and the name
of the State inserted in lieu thereof as owner.   The sale for

taxes was made on the 10th day of May, 1875, under the provisions of the act known as the "Abatement Act," approved March 1, 1875.

It does not appear, otherwise than by the fact that the lands on the original rolls were listed to the State, that they belonged to that class of lands which, on the first day of March, 1875, were "held or claimed by the State" under tax-sales for previous years, which lands alone were subject to a sale under the provisions of the acts of that date. This was insufficient evidence of the fact of such previous sale. That such a sale had been made could only have been proven by the production of the deed from the collector, if the sale was made prior to the adoption of the Code of 1871, or by the introduction in evidence of the sale-list, if made subsequent to that date. *Vaughn* v. *Swayzie*, 56 Miss. 704; *Weathersby* v. *Thoma*, 57 Miss. 296; *French* v. *Ladd*, 57 Miss. 678.

The assessment was void for uncertainty in the description of the land. It was impossible to say which one hundred and forty-three acres of the one hundred and sixty acres contained in the subdivision was delinquent. *Bowens* v. *Andrews*, 52 Miss. 596.

As it has not been shown that the lands were subject to sale under the Abatement Act, it was not governed by the provisions thereof, and a sale on the 10th day of May was void. *Gamble* v. *Witty*, 55 Miss. 26.

It is said, however, that, admitting that the sale was void, the title of the defendant had become absolute by virtue of the provisions of an act approved April 11, 1876, entitled "An act to abolish the office of liquidating levee commissioner, and to provide for the redemption of lands in the liquidating levee district, and for other purposes."

By the first section of this act, the office of liquidating levee commissioner was abolished, and by the second, third, fourth and fifth sections, the books pertaining to said office were directed to be deposited with the auditor and treasurer of the State, and provision was made for transferring to said

officers all property belonging to said levee district, and for determining what claims against the district should be recognized and discharged by said officers.

Sections 6, 7, 8 and 13 of said act are as follows : —

" Section 6. All lands lying within the levee district, which have been heretofore struck off or sold to the State, or Liquidating Levee Board, or commissioner thereof, or to the levee boards of either district, number one or number two, under the provisions of any revenue law of this State, or of any levee law, and which are now held or claimed by the State, or by any one of said levee boards or commissioners, under any tax-sale or forfeiture, may be redeemed at any time prior to the first day of November, 1876, without payment of any interest, costs, or damages, at the office of the auditor of public accounts, by the payment, on the part of the owner, or any other person interested therein, in the liquidating levee bonds, scrip or surplusage certificates heretofore issued by the liquidating levee commissioners or commissioner, or which may hereafter be issued under the provisions of this act, of all State, county, school, levee, or other tax, dollar for dollar."   \*   \*   \*

" Section 7. After the first day of November, 1876, and before the first day of January, 1878, the auditor may sell and dispose of such lands to any person desiring to purchase the same, on the same terms as are provided for the redemption thereof, in the sixth section of this act."·

" Section 8. The auditor of public accounts shall include in one deed all the lands purchased by one person, and all deeds made by said auditor under the provisions of this act shall be *prima facie* evidence of paramount title, and no suit or action shall be brought in any court of this State, to vacate or impeach any such deed, or to maintain any title or deed antagonistic thereto, unless the same shall be bought within one year next after the date of such deed, and after the expiration of one year after the date of such auditor's deed, the same shall be held and deemed by all the courts of this

State to be conclusive evidence of paramount title, and upon which actions of ejectment and all possessory actions may be maintained."

"Section 13. If any of the lands mentioned in this act shall not be redeemed or purchased as herein provided for, on or before the first day of January, 1878, no further time for redemption shall be allowed, and the title thereto shall be vested in the State of Mississippi, and no action in law or equity shall be maintained in any court of this State, either against the State of Mississippi, or any grantee or donee from the State of Mississippi, for the recovery of any such lands, * * * and there shall be no exception in favor of minors or married women, as to any of the limitations provided in this act."

By the third instruction given for the defendant, which was founded upon sect. 8, above quoted, the jury were told, "If they believe from the evidence, that the land sued for was sold to the State, in May, 1875, and that on the 26th day of August, 1879, the State, through its auditor, sold said land to A. J. Paxton, and that he took possession of said land immediately under said deed, with the belief that this title was good, and that he has remained in possession of said land or any part thereof, then the jury must find for the defendant, unless they further believe from the evidence that this suit was brought by plaintiffs before one year from the date of said deed from the State." By the fourth instruction for the defendant, based upon sect. 13 of said act of 1876, the jury were instructed: "If they believe from the evidence that the land sued for was sold to the State in 1875, for the taxes due for 1874, and that the same was not redeemed from the State on or before the first day of January, 1878, then the title of said land became vested in the State, and the plaintiff can not maintain this action, and the jury must find for the defendant."

The third instruction should not have been given for the reason that as to all lands which had been sold prior to the

year 1876 to the State, and not to one of the levee boards or the commissioner thereof, the act of 1876 expired by its own limitation in so far as it authorized a sale of such lands by the auditor, on the 1st of January, 1878, which was long before the purchase of the land by the defendant. The object of the act in so far as it donated to the use of the levee district the delinquent taxes due to the State was accomplished when the proceeds realized by the redemption or sales of the lands between the date of its passage and the first day of January, 1878, were appropriated to the use of the levee districts. The State did not donate absolutely and unconditionally such proceeds whenever they should at any time thereafter be received, but limited its bounty to giving only the sums which should be so received on or before the first day of January, 1878. That this was the legislative intention is apparent from the fact that on March 1st, 1878 (Acts 1878, p. 241), another act was passed providing that all the lands mentioned in the act of 1876 " which are now held by the State of Mississippi, may hereafter be sold and disposed of by the officers who by law may be authorized to sell and dispose of the same, upon the same terms and conditions as are named in sects. 6 and 7 of said act, except the taxes due the State and counties for the fiscal year in which said lands may be purchased, which may be paid in like manner as therein provided for the payment of the taxes of the years 1874 and 1875."

As to all lands of the class to which the land in controversy belonged, the act of 1876 was inoperative after the first day of January, 1878, in so far as a sale thereof by the auditor was concerned. The act of 1878 provided what currency might be received in discharge of the taxes for which it was in default, and was a virtual enactment of sects. 6 and 7 of the act of 1876, but nothing was said in the latter act as to the effect of a conveyance by the auditor, that was declared by sect. 8 of the act of 1876, to which no reference was made in the last act. The form

and effect of such conveyance would therefore be governed by the general law governing in sales of delinquent lands made by the auditor.

We have extracted portions of the act of 1876 other than those contained in the eighth and thirteenth sections, to show that the Legislature was dealing with lands claimed under previous and completed tax-sales. There was to be no release of the title thus held, no new proceedings to acquire a new and independent one in event default was still made in the payment of the taxes for which the lands were claimed. The evident plan and purpose was to permit the owners to redeem within a limited time and then to dispose of the land, if unredeemed, to any purchaser who would accept the title which the State had previously acquired, fortified and protected by the operation of the eighth and thirteenth sections of the act.

There is this marked difference between the scheme of the act now under consideration and that of the act of March 1, 1875, which was construed in the case of *Cochran* v. *Baker*, *ante*, p. 282, that while by this act the State proposed to sell land owned or claimed by it at the date of the passage of the act, by the act of 1875 the title which the State held was released to the owner, all previous taxes were abated and the State proceeded anew to subject the lands as the property of its former owners to the payment of the taxes due.

There is no doubt of the legislative will as expressed in the act. The evident purpose was to secure the title claimed by the State against all attacks by the owner upon any ground, after the expiration of the time limited. The act has a twofold operation ; first, it prescribes a short period of limitation, after which no suit shall be brought by the owner for the recovery of the property ; secondly, it gives to the conveyances under the tax-sales a conclusive effect as evidence, thereby cutting off all inquiry into the existence of irregularities or defects, and thus operates as a curative law.

After much thought and extended examination of the authorities, we are constrained to declare, that viewed in either

light, these provisions are in excess of legislative power, and violate those fundamental rights of property which are protected by that declaration in our bill of rights that " no person shall be deprived of life, liberty, or property except by due process of law."

Before the entry of the defendant upon the lands, the plaintiffs, by their tenant, were in actual occupancy of all the land which was susceptible of cultivation, and were in the constructive possession of the whole tract. The sale of the lands for the unpaid taxes of 1874 was insufficient, under well settled principles, to divest their title. By a proceeding *in invitum* the State had attempted to acquire title under its laws as then existing and had failed. By a subsequent law it provides, that notwithstanding such failure, the shadow of title thus acquired shall become the actual title unless attacked within a certain time. It is the expiration of time without regard to possession which is to transfer title from the owner and vest it in the State, or its vendee or donee. The power of the Legislature to prescribe within what reasonable time one having a mere right of action shall proceed is unquestionable ; but there is a wide distinction between that legislation which requires one having a mere right to sue, to pursue the right speedily, and that which creates the necessity for suit by converting an estate in possession into a mere right of action, and then limits the time in which the suit may be brought. The mere designation of such an act as an act of limitation does not make it such, for it is in its nature more than that. Its operation is first to divest from the owner the constructive possession of his property and to invest it in another, and in favor of the possession thus transferred to put in operation a statute of limitations for its ultimate and complete protection. A complete title to land, according to Blackstone, consists of *juris et sesinæ conjunctio;* the possession, the right of possession and the right of property. One who is in the actual or constructive possession of his lands, and who has the right of possession and of property, needs no action to enforce his

rights. He is already in the enjoyment of all that the law can give him and cannot be disturbed in such enjoyment except by " due course of law." If possession and the right of possession and the right of property are each an element of title, by what right can the Legislature divest the one, if it is prohibited by the Constitution from interfering with the other? If it be said that the owner of vacant lands is only in possession thereof by a fiction of law, and that the Legislature may at any time destroy such fiction, the reply is, that this has not been done or attempted to be done by the act under consideration; the fiction remains, but under it the owner is placed out of, and a stranger is placed in, possession. It is apparent that the effort is to do indirectly that which may not be directly done, to divest title by a mere legislative decree.

In some of the States such acts have been upheld. *Parish* v. *Stevens*, 3 Serg. & R. 298; *Waln* v. *Shearman*, 7 Serg. & R. 357; *Burd* v. *Patterson*, 22 Pa. St. 219; *Stewart* v. *Trevor*, 56 Pa. St. 385; *Rogers* v. *Johnson*, 67 Pa. St. 48; *Johnston* v. *Johnston*, 70 Pa. St. 164; *Newland* v. *Marsh*, 19 Ill. 376; *Gunnison* v. *Hoehne*, 18 Miss. 282; *Lawrence* v. *Kinney*, 32 Miss. 281; *Eldrop* v. *Kuehle*, 27 Iowa, 160. In others they have been declared invalid. *Jeffrey* v. *Brokaw*, 35 Iowa, 505; *Groesbecke* v. *Serley*, 13 Mich. 329; *Baker* v. *Kelly*, 11 Minn. 480.

It is difficult to deduce from the authorities any clear line defining the bounds of legislative power in the enactment of retrospective statutes. Judge Cooley in his valuable work on Constitutional Limitations, says "it is difficult to lay down a comprehensive rule which the authorities will justify," but from an examination of the cases he reaches the conclusion, " that a party has no vested right in a defence based upon an informality not affecting his substantial equities," and, therefore that the Legislature may, by a retrospective law, prevent a reliance upon such defences. Cooley's Const. Lim. 370. In his work on Taxation, p. 229, the same author says: "The general rule has been often declared, that the Legislature may

validate, retrospectively, the proceedings which they might have authorized in advance. Therefore, if any directions of the statute fail of observance, which are not so far of the essence of the thing to be done, that they must be provided for in any statute on the subject, the Legislature may retrospectively cure the defect." Following which statement certain exceptions are noted.

In the recent case of *Foster* v. *Foster*, 129 Mass. 559, a large number of cases upon the subject are classified, and they are distinguished from the case then under consideration by the court. It would too greatly extend the length of this opinion to reproduce that classification here. We note, however, other cases going further, as it seems to us, in upholding retrospective legislation than many of the cases noticed in that opinion. In *Beach* v. *Walker*, 6 Conn. 190 ; *Booth* v. *Booth*, 7 Conn. 350, and in other cases in the same State, it was decided that where a sheriff, in making a sale of lands for the satisfaction of a judgment, had included in his fee-bill fees not allowed by law, which action on his part under the then existing law made void the sale, it was within the power of the Legislature to give validity to such a sale by a retrospective law. In these cases the law was upheld, though it was admitted that it divested a vested right, because the court thought the fees charged were equitably though not legally due.

In *Lane* v. *Nelson*, 79 Penn. 407, the broad ground is taken, that the Legislature may divest vested rights, provided it is not done by a legislative exercise of judicial functions. In *Lily* v. *Underwood*, 10 Serg. & R., it was held within the legislative power to give validity to an irregular judgment; in *Blakely* v. *The Bank of New Castle*, 17 Serg. & R. 64, an act was sustained which validated pending suits.

On the contrary, it has, we believe, been universally held that where a defendant had become entitled to the protection of a defence arising under a Statute of Limitations, it is not competent for the Legislature to give an action for the enforce-

ment of the demand, because such legislation would be an interference with the vested rights of the defendant. If it is the equity of the defence which protects it from legislative action, and if the want of equity leaves it to be dealt with at the legislative will, it would seem that it should be unquestionably within the legislative power to give a new remedy for the collection of a debt confessedly due, and from subjection to which the defendant is only protected by a presumption of law.

We deem it unnecessary to examine at length, in this opinion, the authorities on the subject. It is apparent that in some of the States a much broader power is conceded to the legistive department than in others. The limits of this power are at best uncertain, and, we think, should only be defined as occasion shall require. It is sufficient for the present for us to say that the act under consideration, in so far as it attempts to validate a tax-title which was void under the law as it existed at the time of its enactment, is violative of our Constitution and void. The Legislature may declare what the law shall be for the future ; in some cases it may declare what the law has been for the past, but when the effect of such legislation is to transfer property without the assent of the owner, and vest it in another, it offends not only against natural justice, but against that clause in our Constitution, by which the citizen is protected against loss of property, except by due process of law. *Foster* v. *Foster*, 129 Mass. 559 ; *Orton* v. *Noonan*, 25 Wis. 672.

What is due process of law in proceedings for the collection of taxes is left by our Constitution largely to the legislative discretion. The machinery may be simple and the proceeding summary, but it must be a proceeding which is to be, and not which has been, taken. The citizen must have an opportunity to comply with the requirements of the law, and the State, and not the citizen, must be the actor. If, because of the negligence of its agents, the State shall fail to divest the citizen of his title by a sale for taxes, it may begin anew and

60 MISS. — 67

collect the amount to which it is entitled ; but having proceeded and failed, it cannot, by a mere legislative declaration, accomplish what it failed to do by the proceedings which it had provided.

In *Power* v. *Penny*, 59 Miss., we failed to note the fact that the effect of the statute there construed was to divest the estate of the tax-payer, and applied a principle, proper under certain circumstances, to a case which we now think it should not have been applied. The rule there announced being one of constitutional power, cannot be repealed by legislative action, and to cure the error into which we fell, we take this early opportunity of overruling that case.

Judgment reversed.

CAMPBELL, C. J., dissented, holding the view announced in *Power* v. *Penny*, 59 Miss.