No. 37,409

GEORGE MURRISON (Plaintiff), *Appellant,* v. IRMA FENSTERMACHER, *Appellee.*

(203 P. 2d 160)

Opinion filed March 5, 1949.

*Paul H. Royer,* of Abilene, was on the briefs for the appellant.

*John M. Rugh,* of Abilene, was on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: This action involves a real estate contract and was brought for the purpose of requiring defendant to furnish plaintiff with a merchantable title and thus specifically perform the terms of such agreement. The trial court held the title theretofore tendered plaintiff was merchantable and rendered judgment directing him to pay defendant the balance of the purchase price upon delivery of the abstract title and a warranty deed to the real estate. Plaintiff appeals from that judgment.

The pleadings are not in controversy and it therefore suffices to say, without detailing their allegations, that while the action was for specific performance the actual question they presented for decision by the trial court was whether under a contract for the sale of real estate, the title to which was to be merchantable, the defendant vendor was obliged to remedy an alleged defect in the title, asserted by the plaintiff purchaser to make it nonmerchantable, or could require the latter to accept the title tendered as merchantable.

There being no dispute between the parties as to the existing factual situation upon which their rights were to be determined the cause was submitted to the trial court upon an agreed statement of facts. Such statement serves a dual purpose, in that it not only unfolds the factual story in chronological order of events as they occurred but also discloses all evidence upon which the trial court based its judgment, and on that account should be quoted verbatim. It reads:

"That the defendant Irma Fenstermacher was the owner and possessed of the following described real estate situated in Dickinson County, Kansas, to-wit: Lots 1, 2 and 3, Block 1, Sheeran's Fourth Addition to the City of Chapman, Kansas, the same being a part of the southeast quarter of the southeast quarter of Section 30, Township 12, Range 4 East of the Sixth Principal Meridian, on the 28th day of February, 1948, and that on said day said defendant made and entered into an agreement in writing with the plaintiff herein for the sale of said real estate.

"That a true and correct copy of the contract of sale hereinbefore referred to was attached to the petition filed herein and made a part thereof, and that said agreement provides in part 'party of the first part (defendant) agrees to furnish an abstract showing good and merchantable title to Lots 1, 2 and 3 above described.'

"That upon the execution of the above contract the plaintiff paid to the defendant the sum of one thousand dollars as a part payment of the purchase

money provided for therein, and that said contract provides that the balance of the consideration, to-wit, fifteen hundred dollars, shall be paid by said plaintiff to said defendant as soon as the abstract is approved and the deed ready for delivery.

"That on the 24th day of March, 1948, said defendant tendered to this plaintiff an abstract of title and warranty deed to Lots 1, 2 and 3, Block 1, Sheeran's Fourth Addition to the City of Chapman, Kansas.

"That the abstract of title tendered by said defendant .to said plaintiff shows that a patent was issued by the United States government to one Daniel Lennon on June 1, 1865, covering the southeast quarter of the southeast quarter of Section 30, Township 12, Range 4, Dickinson County, Kansas, and the same was duly recorded in the office of the Register of Deeds of Dickinson County, Kansas, on August 14, 1880.

"That the abstract of title tendered said ·plaintiff fails to show any conveyance of record from the patentee, Daniel Lennon, or his heirs, to any person or persons whomsoever.

"That the plaintiff herein refused to accept the abstract of title' so tendered for the reason that the said abstract by reason of the outstanding title of said Daniel Lennon does not show a good and merchantable title to said premises to be in said defendant, as required and specified in the said contract of sale heretofore mentioned.

"That the plaintiff is now ready, able, and willing to fulfill the agreement to purchase said premises, and upon having a good and merchantable title made of said premises and a conveyance in fee thereof to pay the residue of the purchase money to the defendant.

"That neither the plaintiff nor defendant know, and with the exercise of due diligence are unable to ascertain the whereabouts of the said Daniel Lennon, or whether he is living or dead, and if he be dead the names or whereabouts of any of his heirs, executors, administrators, devisees, trustees, or assigns.

"That a portion of the southeast quarter of the southeast quarter of Section 30, Township 12, Range 4 East of the Sixth Principal Meridian, Dickinson County, Kansas, was platted by one Patrick Sheeran, a widower, on· December 1, 1893, as Sheeran's Fourth Addition to the City of Chapman, Kansas, and recorded December 23, 1893, in the office of the Register of Deeds of Dickinson County, Kansas.

"That the said plattor, Patrick Sheeran, conveyed Lots 1, 2 and 3 of Block 1, Sheeran's Fourth Addition to the City of Chapman, Dickinson County, Kansas, to N. W. Fenstermacher by warranty deed dated December 5, 1895, and recorded in the office of the Register of Deeds of Dickinson County, Kansas, on December 6, 1895.

"That the title to the above described Lots passed from N. W. Fenstermacher to the defendant by proper conveyance and descent.

"That all of the statements herein contained relative to the title to the real estate herein involved are regularly and properly shown on the abstract of title, properly and regularly certified by an abstractor licensed to do business in the State of Kansas, tendered said plaintiff by said defendant, and that said abstract of title contains no defects other than the outstanding title of Daniel Lennon as herein set forth.

"That the defect complained of in said abstract of title is one which could be cured by an appropriate action to quiet title to the premises in question by decree of the District Court of Dickinson County, Kansas."

At the time of the trial chapter 264 of the Laws of 1945, now G. S. 1947 Supp. 67-612, was in full force and effect. So far as applicable to the facts herein involved, it reads:

"In all cases where a plat of any original town or addition thereto has been of record more than twenty-five years and deeds executed by the person or corporation platting the same and conveying lots or blocks in said original town or addition have been of record more than twenty-five years prior to the taking effect of this act, such deeds shall be conclusively presumed to have conveyed perfect title notwithstanding any defect in the title of the grantor therein or the failure of the grantor's spouse to join therein: Provided always, Such presumption shall not be applied in any action brought within one year from the date this act takes effect."

· With the foregoing evidence and statute before it the trial court made two findings which read as follows:

"(1) That the abstract of title tendered by said defendant to said plaintiff shows that the outstanding title acquired by Daniel Lennon by patent from the United States Government was never conveyed by said patentee or his heirs to any person whatsoever, and that the outstanding title in the said patentee, Daniel Lennon, constituted a break in the chain of title to said real estate, and was such a material defect as would render the title to said property unmarketable;

"(2) That at the time of the tender of said abstract of title, and at the time of performance of the contract by said defendant, G. S. 1947 Supplement 67-612 was in full force and effect, and that the property described herein had been platted and conveyed by one Patrick Sheeran, which said plat and deed had been of record in the office of the Register of Deeds of Dickinson County, Kansas, for more than twenty-five years prior to the 28th day of June, 1945, the effective date of said G. S. 1947 Supplement 67-612; that the said statute provides that such deeds as the one upon which said defendant's title is based shall be conclusively presumed to have conveyed perfect title to said premises, notwithstanding any defects in the title of the grantor therein; and that the break in the chain of title from Daniel Lennon, patentee, to the subsequent record owners of said real estate has been cured, remedied, and rendered immaterial by operation of the statute hereinbefore quoted."

Based on such findings it then rendered the judgment, heretofore indicated, in favor of defendant and against the plaintiff from which, after the filing and overruling of his motion for a new trial, the plaintiff perfected this appeal.

Appellant's claims of error, although differently stated, are all based upon the premise G. S. 1947 Supp. 67-612, is invalid, ergo, the trial court's judgment, that its terms cured and rendered immaterial

appellee's defective and otherwise nonmerchantable title, was erroneous and cannot be upheld. We therefore turn directly to that question.

In determining the validity of any statute it will, of course, be conceded the first essential is to fully understand the import of its terms. When the one here involved, material terms of which have been heretofore set forth and quoted, is analyzed there can be no question but what its terms are clear and unambiguous. In effect they simply provide that as between two parties, neither of whose rights to a tract of real estate have been adjudicated, one person is the owner and the other is not. Otherwise stated, for purposes of emphasis and adhering more strictly to the language used therein, a deed executed by the person platting an original town or addition, where both the deed and the plat have been of record for more than twenty-five years prior to the taking effect of the act, is declared by legislative fiat to be conclusively presumed to have conveyed perfect title notwithstanding any defect in the grantor's title with the proviso that the presumption is not to be applied in any action brought within one year from the effective date of such statutory enactment.

At this point we pause to point out that the statute does not purport to run in favor of one in possession under deeds such as are described therein against one who may be out of possession but is nevertheless the holder of a title which so far as the record shows has never been alienated. Under its terms such deeds are conclusively presumed to convey perfect title irrespective of possession and occupancy by the holder of the prior unalienated title and even though he may have actually been in possession thereunder he is required to come in and defend it in order to avoid the presumption and establish his title.

We are not here concerned with the validity of curative, remedial or limitation statutes in general which, it suffices to say, have long been recognized by this court as valid when properly enacted. Our problem is to determine whether the instant statute is in violation of the terms of the 14th amendment to the constitution of the United States providing that no state shall deprive any person of his property without due process of law and will be limited strictly thereto.

This, so far as the briefs of the parties and our own research disclose, is the first time a statute containing language identical with that here involved or even similar has been presented to this court

for consideration. The question it raises has, however, been decided in other jurisdictions.

Thus in *Dingey v. Paxton,* 60 Miss. 1038, 1054, in holding a statute which contained somewhat similar language invalid, it was said:

". . . It is the expiration of time without regard to possession which is to transfer title from the owner and vest it in the State, or its vendee or donee. The power of the Legislature to prescribe within what reasonable time one having a mere right of action shall proceed is unquestionable; but there is a wide distinction between that legislation which requires one having a mere right to sue, to pursue the right speedily, and that which creates the necessity for suit by converting an estate in possession into a mere right of action, and then limits the time in which the suit may be brought. The mere designation of such an act as an act of limitation does not make it such, for it is in its nature more than that. Its operation is first to divest from the owner the constructive possession of his property and to invest it in another, and in favor of the possession thus transferred to put in operation a statute of limitations for its ultimate and complete protection. . ."

Following the rendition of the foregoing decision the Mississippi Supreme Court in *Leavenworth v. Claughton,* 197 Miss. 606, 19 S. 2d. 815, held:

"The legislature is without power to divest of his land, an owner holding by a fee-simple title with nobody else in possession, either directly or indirectly by legislation cutting down the ownership to a mere right of action which will be lost unless asserted within prescribed period." (Syl. ¶ 5.)

And at page 617 of its opinion said:

". . . But whatever else may have happened, the principle announced in Dingey v. Paxton, 60 Miss. 1038, has withstood the challenges of the years, and still fully stands, that it is not within legislative power to divest an owner of his land, when he holds by a fee simple title with nobody else in possession, and transfer it to another; and as this may not be done directly, it may not be done indirectly by an enactment the effect of which is to cut down the ownership to a mere right of action, and that even that shall be lost unless asserted within the grace of a prescribed period. . ."

In *Groesbeck v. Seeley,* 13 Mich. 329, it was held:

"One who is in the actual or constructive possession of property is under no obligation, nor can he be compelled to take measures against an opposing claimant; and a law depriving him of the right of property in such a case is in no sense a limitation law, but an unlawful confiscation." (p. 330.)

And on page 343 of the opinion said:

"A person who has a lawful right, and is actually or constructively in possession, can never be required to take active steps against opposing claims. The law does not compel any man who is unassailed to pay any attention to unlawful pretenses which are not asserted by possession or suit. When such a title is set up, he has a right to defend himself, by jury, if the claim is one

of common law cognizance, or otherwise, is of a different nature. But to hold that, under any circumstances, a man can be deprived of a legal title without a hearing, is impossible, without destroying the entire foundations of constitutional protection to property. No one can be cut off by limitation until he has failed to prosecute the remedy limited; and no one can be compelled to prosecute, when he is already in possession of all that he demands."

To the same effect is *Baker v. Kelley*, 11 Minn. 480, where the following statements appear:

". . . It may be admitted that it is competent for the Legislature to limit the time within which a party in possession may commence an action under our statutes. to remove a cloud from his title, or silence an adverse claim, but that it .may require him to bring such action as a condition to the enjoyment of his property in the enforcement or defense of his rights is quite a different thing. It is not necessary for a party in the enjoyment of his rights to institute any proceedings against an adverse claimant, and to require him to do so would be, in many cases, imposing a grievous and expensive burden. A law requiring a party to take such action is not; nor has it, any analogy to a statute of limitation. Statutes of limitation only operate as an extinguishment of a remedy, and, of course, can have no application to a party who neither seeks nor needs a remedy. The Supreme Court of Michigan, in *Groosbeck v. Seely*, 13 Mich. R. 329, says:

"'Limitation laws always must operate to compel a party to enforce or prosecute his claim within a reasonable time, but a party who is in the enjoyment of his rights cannot be compelled to take measures against an adverse claimant, and a law taking away the rights of a party in such cases is an unlawful confiscation, and is no sense a limitation law.' This position is, I think, tenable. Property in our State is not held subject to the will or permission of the Legislature. The rights of property-holders are fixed and guarded by the organic laws. By our Constitution, all lands within the State are declared allodial—every man's property is his own, absolutely and unqualifiedly, and he has the right to use and enjoy it according to his pleasure, injuring no other man, and he can be deprived of it only by the exercise of the power of taxation, or of eminent domain, or by due process of law. . .

". . . To say, as has been suggested, that the 'law of the land,' or 'due process of law,' may mean the very act of the Legislature which deprives the citizen of his rights, privileges or property, leads to a simple absurdity. The Constitution would then mean that no person should be deprived of his property or rights unless the Legislature shall pass a law to effect the wrong, and this would be throwing the restraint entirely away. The true interpretation of these constitutional phrases is, that when rights are acquired by the citizen under the existing law, there is no power in any branch of the government to take them away; but when they are held contrary to the existing law, or are forfeited by its violation, then they may be taken from him— not by an act of the Legislature, but in a due administration of law itself—before the judicial tribunals of the State." (pp. 495, 496, 497.)

Other decisions of like import are *Buty v. Goldfinch,* 74 Wash. 532, 133 Pac. 1057 and *Case v. Dean et al.,* 16 Mich. 12, 21.

That the foregoing decisions adhere to no new or startling doctrine is evidenced by statements to be found in well-established legal treatises.

In his excellent work on Constitutional Limitations Judge Cooley (Vol. 2, 8th ed., pp. 762, 763) observes:

"All limitation laws, however, must proceed on the theory that the party, by lapse of time and omission on his part, has forfeited his right to assert his title in the law. Where they relate to property, it seems not to be essential that the adverse claimant should be in actual possession, but one who is himself in the legal enjoyment of his property cannot have his rights therein forfeited to another for failure to bring suit against that other within a time specified to test the validity of a claim which the latter asserts, but takes no steps to enforce. It has consequently been held that a statute which after a lapse of five years makes a recorded deed purporting to be executed under a statutory power conclusive evidence of a good title, could not be valid as a limitation law against the original owner in possession of the land. Limitation laws cannot compel a resort to legal proceedings by one who is already in the complete enjoyment of all he claims."

See, also, 34 Am. Jur. 29 ¶ 20, where the following statement appears:

"Although the right to commence and prosecute an action may be lost by delay, it is a well-established principle that the right to defend against a suit for the possession of property is never outlawed. Hence, a statute cannot be sustained as one of limitations where it requires a party in full possession and enjoyment of property to bring an action within a given time or else forfeit it. A person in the possession of property cannot be required under penalty of forfeiture to bring an action against one claiming an adverse interest or title to such property."

We are convinced the doctrine announced in the foregoing decisions is sound in principle. Therefore, since the involved statute has the effect of divesting the holder of a record fee simple title to land of his title and transferring it to another without regard to the possession and occupancy of the owner whose title has never been alienated, unless his title and ownership is asserted in an action brought within one year from the date such statute took effect, we are constrained to hold it violates the due process clause of the constitution and is invalid.

The conclusion just announced ends this lawsuit and requires a reversal of the judgment. It is so ordered.

ARN, J., not participating.