## B. C. FRANKLIN v. CHARLES KESLER.

The opinion of the court in the case of the State v. Delesdenier, 7 Tex. R., 76, reviewed and approved.

The joint resolution for the relief of William Bryan, of December 6th, 1836, did not authorize the President of the Republic to attach any conditions whatever to the scrip, the issuance of which was therein provided for. It did not contemplate that the scrip should secure to its holders any right of priority in the location of the public lands; much less, that it should deprive the government of the right to reserve from location any portion of the public domain, as the policy or the exigencies of the republic might demand.

Under the act of congress of June 12, 1837, authorizing the survey into lots of Galveston Island, and their sale at public auction, a forfeiture is annexed to the failure to pay the instalments by the purchasers of lots, but it is dispensed with by the act of the 9th of May, 1838, which authorized the issuance of titles upon the delivery by the purchasers to the commissioner, of a certificate of purchase, and a receipt for the payment of the purchase money from the secretary of the treasury.

A patent to land signed by the commissioner of the general land office, transmitted by that officer to the President for his signature, and is by him signed and delivered to the agent of the grantee, vests the title, which is not in any way affected by the neglect or failure to return the patent to the land office for registration in that office.

APPEAL from Galveston.    Tried below before the Hon. Peter W. Gray.

This was an action of trespass to try title, brought by Charles Kesler against Benjamin C. Franklin for the recovery of a lot on Galveston island, known on the map of the island as lot No. 530, in section number one, of the government surveys, consisting of twelve acres more or less.

The case was submitted to the decision of the presiding judge on the facts as agreed to.    The plaintiff claimed title under a patent from the government in 1845, issued to him for the tract, based upon the following facts, to wit: Robert Walker bid off the lot at the sale of lots on the island of Galveston, under an act of the congress of the republic of Texas of the 12th June, 1837, entitled "An act to dispose of Galveston and other islands of the

republic of Texas," (Art. 1829, Hart. Dig.,) on the —— day of
——, 1838.· A certificate of purchase was issued to Walker by
J. T. Doswell and G. M. Adams, acting under instructions from
the secretary of the treasury. Walker transferred the certificate
of purchase to the plaintiff, who paid into the treasury of the
republic the last instalments of the purchase money on the 20th
day of January, 1842. On the 7th day of May, 1845, the com-
missioner of the general land office made out and sent to the
President of the republic a patent to the plaintiff for the said lot,
for his signature, who signed and delivered it to the plaintiff's
agent. The patent was not returned to the commissioner of the
general land office, and was by the agent lost without its having
been registered in the general land office.

The defendant claimed title under a patent issued on the 28th
day of November, 1840, to Levi Jones and Edward Hall to a
tract of land including the said lot; which patent issued by virtue
of a location made by Edward Hall on the 28th day of September,
1838, and renewed on the 4th day of December, 1839; the loca-
tions being made in virtue of land-scrip issued by authority of the
republic of Texas, under an act of the congress of the republic of
Texas, entitled "An act for the relief of William Bryan," passed
the 6th day of December, 1836. The patent to Jones and Hall
was issued in obedience to a writ of mandamus from the District
Court. No writ of error or appeal was taken from the decision.
In the year 1854, the legislature passed an act confirming the
patent to Jones and Hall, and to those claiming under them.
Neither of the patents have been recorded in the recorder's office
of the county of Galveston.

The land-scrip issued under the authority aforesaid to William
Bryan contained, among others, the following conditions to wit:

"Article 1st. That no preference shall be given to any person or
persons who may have hitherto obtained lands from the govern-
ment of Texas, by purchase or bounty lands, or shall hereafter
obtain them in that manner, over the holders of this scrip, if such
lands have not been already located.

"Article 2d. When the land office of this republic shall be
opened, (of which the world will be duly apprised,) the holder or

holders of this scrip shall be entitled to make his or their location, on just and equitable terms with all other persons now holding scrip; and no priority of election shall be given to those who at present hold scrip, over the purchaser of this scrip."

The other articles attached to the scrip had reference to the expense of obtaining title, form and requisites of assignment of the scrip, &c.

The contract referred to in the opinion between Austin, Archer and Wharton on the one part, and Thomas D. Carneal and others of the second part, was made on the 12th day of January, 1836, by which the parties of the second part severally agreed to loan the amounts which each respectively engaged to furnish, amounting in the aggregate to $200,000. It was stipulated by the terms of the contract, that the lenders or the holders by endorsement of land-scrip, should have the right to take lands in the payment of the scrip, and should have the right to locate on such public land as they may think proper. That the lenders or holders of the scrip shall make their selection of lands within six months after the government of Texas shall have officially given notice that their lands have been surveyed and plats furnished; after the expiration of which term, they shall lose their right of *priority* of selection of lands, but not their right to make selections. Article fifth of the contract provided that "no grant or sale of lands shall be made by the government of Texas, from and after the day of the date hereof, which shall not contain a full reservation of priority for the locations to be made under this loan; provided, however, that no vested right already existing to lands shall, in any manner, be interfered with by such priority of location."

Article sixth provided, that "none of the public lands are to be offered at public or private sale, until after the locations hereinbefore provided for, shall have been made, agreeably to notice given, which locations, if made, shall be completed to the said lenders or holders of scrip, free of all expenses of surveying."

There were other provisions of a character beneficial to the holders of the scrip, and not enjoyed under the general laws regulating interests in lands in Texas.

Franklin v. Kesler.

.The Commissioner of the General Land Office in his communi-cation to the President dated May 7th, 1845, enclosing to him the patent to the plaintiff for his signature, remarked that " a patent for the land upon which the said lot is situated, was issued by Mr. John P. Borden, upon the field-notes of a survey of land scrip, issued in conformity to a joint resolution authorizing the Presi-dent to negotiate a loan for twenty thousand dollars, approved Dec. 10th, 1836, in which law is contained a reservation of all islands belonging to the Republic. Believing the patent for the survey upon the scrip to have been erroneously issued, I have the honor to submit the question for your decision, and the enclosed patent for your signature." In which view the President concur-red, and signed the patent accordingly, as has been already stated.

The court rendered judgment in favor of the plaintiff for the recovery of the land sued for.

The act of Congress of June 12, 1837, (Hart. Dig., 1829) authorized the Secretary of the Treasury to cause the island of Galveston (except the grant to M. B. Menard) to be surveyed in lots, and to sell the lots at public auction on the 2d Monday of November, 1837, to the highest bidder, payment to be made one-fourth in cash, and the other three-fourths in three equal instal-ments, at three, six and nine months thereafter, and authorized the President to issue patents to the purchasers. A failure to pay the several instalments, it was provided, should operate a forfeiture of all sums previously paid, and that the lands purchased should revert to the government.

On the 9th of May, 1838, Congress by a joint resolution, re-solved, " that the President of the Republic and the Commissioner of the General Land Office, are hereby authorized and required to issue titles to purchasers of lots on Galveston Island; provided, that the said purchasers shall deliver to the Commissioner a certi-ficate of purchase, with a receipt for the payment of the purchase money in full from the Secretary of the Treasury." (Hart. Dig., Art. 1889.)

*B. C. Franklin,* in *pro. per.*

*P. C. Tucker,* for the appellee.

BELL, J.—-The most important questions which are presented to our consideration in this case, were fully considered in the case of the State v. Delesdenier, 7 Tex., page 76. After a careful review of the opinion of the court in that case, we can see no sufficient reason for withholding our approbation from the views expressed in it. The special judge who delivered the opinion of the court in the case referred to, discussed the rights of the holders of the Bryan scrip, the validity of the patent issued to Jones and Hall, and the proper construction to be given to the latter clause of the 39th section of the act of the 14th of December, 1837, with distinguished ability, and we concur in the conclusions then announced.

The original contract between Messrs. Austin, Archer and Wharton, agents of the people of Texas, acting under a commission issued to them by Henry Smith, Governor of Texas, of the one part, and Thomas D. Carncal, James F. Irwin and others, of the other part, for the loan to Texas by the parties of the second part, of the sum of two hundred thousand dollars, is made a part of the statement of facts in this case, and reference is made to it by the agreement of the parties, as a contract under which land scrip had been issued by the Republic of Texas prior to the issuance of the land scrip located by Edward Hall. This reference was doubtless made for the purpose of arguing that the conditions attached by the President of the Republic to the Bryan scrip, referred to the terms of the contract between the commissioners Austin, Archer and Wharton, and Messrs. Carneal, Irwin and others. To this it is enough to reply, that the joint resolution for the relief of William Bryan of the 6th of December, 1836, did not authorize the President to attach any conditions whatever to the scrip, the issuance of which was authorized by the resolution. The resolution was simply to the effect that the President was authorized to place in the hands of William Bryan, and to authorize him to sell a sufficient quantity of land scrip to pay all the lawful demands against the government owned by said Bryan, or for which the said Bryan was in any way liable, for or on account

of the government.   The resolution did not contemplate that the scrip to be issued in pursuance of its provisions, should secure to its holders any right of priority in the location of the public lands; much less that it should deprive the government of the right to reserve from location any portion of the public domain, as the policy or the exigencies of the Republic might demand.

We are of opinion that the appellee, Kesler, showed a good title in himself to the land in controversy.   The act of the 9th of May, 1838, dispensed with the conditions prescribed by the act of the 12th of June, 1837, as to the time within which payments should be made by the purchasers of lots on Galveston Island, and authorized the President and the Commissioner of the General Land Office to issue titles to the purchasers, upon the delivery by the purchasers to the Commissioner, of a certificate of purchase, and a receipt for the payment of the purchase money from the Secretary of the Treasury.

The signature of the patent to Charles Kesler, by the President of the Republic, and the delivery of it to the agent of the grantee, vested the title in the grantee, and the title thus vested could not be in any way affected by the neglect or failure to return the patent to the Land Office for registration in that office.

We are of opinion that there is no error in the judgment of the court below, and the same is therefore affirmed.

Judgment affirmed.