## JOSEPH FRANKLIN v. PATRICK TIERNAN.

(Case No. 1792.)

1. PRACTICE — BILLS OF EXCEPTIONS.— While it is the duty of the district judge trying a cause to submit to opposing counsel for their inspection, before signing them, bills of exception prepared and tendered by appellant's counsel, no opinion is expressed as to whether a failure to perform this duty would in any case constitute a sufficient reason for wholly disregarding the bills of exception, nor whether the failure could be brought to the notice of the supreme court by affidavits filed after appeal.

2. SAME — BILLS OF EXCEPTION.— The supreme court will not resort to conjecture to determine the grounds on which an appellee objected to the introduction of evidence, the exclusion of which was assigned as error. If the objection was a general one, the bill of exceptions should still show the grounds on which the judge below based his ruling.

3. ARGUMENT OF A CAUSE.— Improper and uncalled for reflections on a party to a suit by counsel, during a trial, when not warranted by the evidence, may furnish ground for the reversal of a judgment.

4. CHARGE OF COURT.— A charge which in effect informs the jury that they are at liberty to believe or not facts disclosed in an official exhibit from the books of the state comptroller's office, properly in evidence before them, in a case where no issue of forgery thereof was properly raised, is error.

5. PENCIL WRITING — EVIDENCE.— A pencil memorandum appearing in the books of the secretary of the treasury of the republic of Texas in 1837 is evidence of the payment made on a sale of government lots, which it recites, unless it is clearly shown that the individual who wrote it had no authority to make the entries. On this point the cases of Stone v. Sprague, 24 N. H., 309, and Kerr v. Farish, 52 Miss., 101, referred to and discussed.

6. LEAD PENCIL MEMORANDA.— As a general rule, loose lead pencil memoranda, made on a public record, will not as evidence import verity as to their contents. The decision in this case admitting such evidence, and following a like decision in 56 Tex., 618, refers to such memoranda made in the treasury department of the republic of Texas in 1837, when the republic was struggling for an existence, and when its records were carelessly kept. The decision made then, and now, admitting such evidence, will not be extended to apply to such pencil memoranda made in records of a later date.

APPEAL from Galveston. Tried below before the Hon. Wm. H. Stuart.

Appellee brought this suit on the 21st of September, 1877, in trespass to try title against appellants, to recover possession of twenty acres of land situated in the county of Galveston, and comprising two smaller tracts of ten acres each, known as lots 120 and 125 in section 2, on Phelan's map of the original survey of Galveston Island, alleging that it was the same that was granted by the state of Texas to the heirs of John Lambert, deceased, assignee of Francis Hughes, and their heirs or assigns, by patent dated December 1, 1876. By amended original petition, plaintiff pleaded specially that

he had bought, on August 27, 1870, the certificate No. 65 issued to said Hughes by the board of land commissioners of Galveston county, July 4, 1844, and which had been, by a chain of regular transfers, conveyed down to plaintiff, who, by reason thereof, had become the owner of the land.

Franklin and Hurlbut presented by their amended original answer, filed December 26, 1882, a general demurrer, plea of not guilty, a suggestion of valuable improvements made in good faith more than a year before the commencement of the suit, and during the time of their adverse possession under a *bona fide* belief of ownership; and specially that the lots in controversy had been sold to James S. Holman, under whom defendant Franklin claimed, by the republic of Texas in the year 1837; that Holman had paid the purchase money therefor and continued to own them until his death; that his widow, Mrs. Martha W. Holman, in March, 1870, sold and conveyed to defendant Franklin a one-fourth interest in all lands owned by her on Galveston Island, and on May 5, 1876, sold and conveyed to him the lots in suit by specific designation; that he had been in possession since September 14, 1875; that plaintiff, by his claim, cast a cloud upon his title, which he prayed might be removed, the patents be adjudged invalid and void, and his title established by the decree.

Judgment rendered upon verdict in favor of Tiernan, for the title and possession of the premises and for $343.75 as rent.

This case was before the supreme court on a former appeal (56 Tex., 648), to which reference is made for much contained in the statement of facts.

The deposition of the state comptroller, and the certified copy of the record set out in the accompanying exhibit, showed the sale by the republic of Texas of a number of lots on Galveston Island, including those sued for, and the payment of the purchase money and the entry thereof, with names of purchasers, among which appeared that of James S. Holman, as having bought and fully paid for the lots claimed by plaintiff; also the deposition of W. C. Walsh, commissioner of the general land office, showing the issuance of patents for some of the lots named in the exhibit attached to the comptroller's deposition, by authority of certificates from the secretary of the treasury, that the purchase money had been paid for said lots in conformity to law, certified copies of which certificates were annexed, which, in connection with the certified copy from the records in the comptroller's custody, showed the sale of the lots in question, besides many others, and the manner of keeping a record

thereof, and the entries of payments, which appeared in pencil writing in the original record.

The deposition of John M. Swisher was to the effect that he was assistant clerk in the treasury department of the republic of Texas from 1839 to 1841, in which latter year he was appointed chief clerk, from which position he resigned about October 1, 1841. He had, as chief clerk, general supervision of the records and archives of that department, including the records of the sale of lots on Galveston Island (which sales were made by authority of an act of congress passed June 12, 1837). He identified the book in the comptroller's office, a copy of a portion of which was annexed as an exhibit to that officer's deposition, as the record book used in the treasury during the time he was chief clerk. The greater portion of it was in the handwriting of William H. Sandusky, who wrote a peculiar hand which the witness knew as well as his own. The numbers of lots, purchasers' names, amount of purchase and headings of the different columns of the entire record were in Sandusky's handwriting. The witness also identified the record by several entries in his own handwriting and also several written by one William Sevey, who preceded him as chief clerk, and by H. Kloppenberg, his successor. The pencil figures opposite a large number of lots, including those sued for, in the column of payments, were in Sandusky's handwriting. In this book a register of sales of all the lots in the city of Austin was kept, and it was used until 1863, when the last of those lots were sold.

The charges asked by defendants and refused were as follows: "The jury are instructed that if they find from the evidence that the property in controversy was sold to James S. Holman by the republic of Texas, in pursuance of the act of 1837, directing the secretary of the treasury to sell the land upon the Island of Galveston, except the league and labor previously granted to Menard, then you will find in favor of defendants."

"The jury are instructed that the exhibit attached to the comptroller's deposition is a duly certified copy of an official archive or record of the secretary of the treasury's office, and is competent evidence of the sale of the lots in controversy to James S. Holman and of the payment by him of the purchase money."

The charge asked by plaintiff, and given, was: "The tabular statement annexed as an exhibit to the comptroller's deposition is admissible as evidence before the jury, but the jury are judges of the credibility of the evidence."

Exceptions were taken to the refusal to give the charges asked by the defendants.

*James B. Stubbs*, for appellant, cited: Franklin v. Tiernan, 56 Tex., 618; Act of 1837; Pasch. Dig., 708, art. 1829 and note, and arts. 4249, 5414; R. R. Co. v. Stewart, 57 Tex., 166; Wintz v. Morrison, 17 Tex., 387; Hough v. Hill, 47 Tex., 148; R. S., art. 2252; Paschal v. Perez, 7 Tex., 348; Herndon v. Casiano, 7 Tex., 322; Titus v. Kimbro, 8 Tex., 214.

*Geo. Mason* and *Howard Finlay*, for appellee, cited: Paschal v. Perez, 7 Tex., 356; Franklin v. Tiernan, 56 id., 627; Hart. Dig., arts. 1819, 1835, 1842; Constitution of Texas of 1845, art. 12, sec. 1.

On pencil memoranda they cited: 1 Greenl. on Ev. (12th ed.), sec. 501, note 2; Meserve v. Hicks, 4 Foster (N. H.), 295; Stone v. Sprague, id., 209.

WEST, ASSOCIATE JUSTICE.— There is a motion filed in this case, on behalf of the appellee, to strike from the record all the appellant's bills of exceptions. This motion is based on the ground that the bills in question were not submitted to appellee or his counsel before they were signed and filed in the case.

It appears that they were all prepared in time by the appellant, and delivered to the presiding judge for his examination and action, as required by the statute.

It is said that the district judge, through inadvertence or from some cause, failed to submit these bills, as the statute makes it his duty to do, to appellee's counsel, and they state under oath that they were not aware of the existence even of such bills as are found in the record before us until some time after the final adjournment of the district court. R. S., art. 1364.

The counsel also for appellee make oath that these bills as prepared and filed, and especially the third and last one, do not set forth the matters therein detailed truly and correctly, as they actually occurred at the time, on the trial of the case.

Counter-affidavits are also filed by both the appellant and his counsel, and also by one of the jurors who tried the case, in effect affirming the correctness of the statements contained in the bills of exception, and more especially the matters contained in the last bill.

There is also accompanying the motion, an unofficial statement of the district judge who tried the case, on the subject. It was the duty of the district judge and not of appellant's counsel to submit the bills of exception in question to the opposing counsel.

It would then seem that the failure of the district judge to do his duty in this respect should not prejudice the rights of the appel-

lant.  He is in no wise at fault.  He has in fact done all that the law requires him to do, in this behalf, to secure to himself the right to have the action of the district judge, on the matters contained in the bills, revised.

It is possible that this failure of the judge to perform his duty in this respect may operate in some cases, possibly in this case, to the prejudice of appellee.  In view, however, of the disposition that we have concluded to make of this case, on other points, without reference to the matter now being considered, we do not deem it necessary now to determine whether we would, in any case whatever, consider such failure to perform his duty, on the part of the district judge, as furnishing a sufficient reason for wholly disregarding bills of exceptions filed under such circumstances.  Nor will we at present pass upon the question as to whether such failure, on the part of the judge, to comply with the requirements of the statute, can be brought to the attention of this court in the manner in which it is sought here to be done.

Before passing from this question to other more important ones in the case, we will make a further remark in reference to two of the bills of exceptions now under consideration.  Whether they were rightly prepared or not, the two first of them are not drawn in such a manner as to bring properly and satisfactorily before this court, for revision, the action of the district court on the matters then before it.

Both bills state, in the most general terms possible, after setting forth the substance of the evidence proposed to be introduced and the purpose for which it was intended to be used, that the appellee objected to its introduction, and the court sustained the objection.  Why the appellee objected, whether the objection embraced one or more points, the record is silent.  We cannot resort to conjecture for the purpose of ascertaining or arriving at the probable or possible grounds on which the appellee based his objection.  If the objection was in fact a mere general one, as would seem from the record, it was still important for the bill of exceptions to show, if the party desired the appellate court to revise in this respect the action of the judge, on what grounds, if any, the judge based his conclusion in the matter.  On this point, also, the bills are silent.

The third bill, however, seems to present the matters complained of in it fairly enough before us for consideration.  This bill relates to the manner and style in which one of the counsel for appellee is alleged to have expressed himself in reference to the appellant, in arguing the case before the jury.  In view, however, as we have

before intimated, of the course we will take in disposing of the case on other points, we do not deem it necessary now to pass fully on the matter raised by this bill. The truth of the contents of the bill under consideration is denied by appellee's counsel. The district judge also states, in the same connection, that he did not submit the bill in question to appellee's counsel for inspection, and also states that he was engaged in writing his charge while the counsel was addressing the jury, and did not hear distinctly what was said by him.

We are the more inclined to think the bill under consideration does not detail with entire accuracy the remarks of counsel, from the fact that, after a careful examination of the evidence, there is no portion whatever of the testimony that casts the slightest suspicion on the appellant, in reference to the tabular statement or exhibit in question, or which would in the least excuse or palliate any uncharitable or harsh allusions to him, in connection with it.

In a suitable case, where it becomes necessary to do it, improper and uncalled for reflections on parties to the suit by counsel, when not warranted by the evidence, would be a good ground for a reversal of the judgment. It is for this, as well as many other good reasons, always best for counsel to confine their remarks to the case made by the evidence. Willis v. McNeill, 57 Tex., 465.

For the reasons stated above, in the present case we do not now deem it necessary to pass on this matter, as there are other more important points to be examined in the case.

These we will now proceed to consider.

We are of opinion, then, that the charge of the court, taken together, was erroneous, as applied to the facts of this case, and was calculated to mislead the jury as to the effect to be given by them to the certified copy of the extracts from the books of the comptroller's office, in relation to the sale by the late republic of Texas, to J. S. Holman, of the Galveston Island lots in question. This tabular statement was attached to the deposition of the comptroller, and was under the seal of his office. It is true that the court did, in the concluding paragraph of its charge, inform the jury that the official exhibit in question was competent evidence of the facts therein contained as to Holman's purchase and payment. The effect of this instruction was, however, practically destroyed by the preceding portion of the charge on the same subject, in which the judge calls the attention of the jury to the Holman purchase in the following language:

"The defendants claim the land by virtue of alleged sales to

James S. Holman by the state. If you believe from the evidence that the state sold the lands to Holman and that Holman paid the purchase money, then the defendants would be entitled to your verdict for the land; but unless you believe from the evidence that such purchase money was paid to the state, then your verdict should be for the plaintiff."

In this same connection, too, and as if it was intended to emphasize it and give it special prominence in the minds of the jury, the court, at the instance of appellee, further, as to the matter of the sales to Holman, instructed the jury as follows:

"The tabular statement, annexed as an exhibit to the comptroller's deposition, is admissible as evidence before the jury, but the jury are judges of the weight and credibility of the evidence."

This in effect told the jury that they were at liberty to believe the facts disclosed by the exhibit to be true or not, and that, too, though there might be no evidence before them to contradict this exhibit. It did not restrain or limit them in the least, in this matter. The jury might well believe, and no doubt did believe, it to be a correct exhibit, but though it might be a correct extract or copy from the public archives of the state, yet that they had the right, under the charge of the court, to entirely disregard it in arriving at their conclusions, should they see fit to do so. They were constituted by the court the exclusive judges of its credibility. Other evidence of the appellant tended to corroborate the facts as to the genuineness, age and authenticity of the tabular statement in question. There was practically nothing in the testimony that would have justified the court in telling the jury, in substance, that they could, if they saw fit, disregard this piece of evidence, if in their opinion they did not believe it credible.

In relation to this important instrument of evidence introduced on the trial of the case by the appellant, and now under consideration, we deem it proper in this connection to make a remark or two, which may be of service to the parties in the future trial of this case. A very careful examination of the evidence in the case has led us to the conclusion that it will be almost out of the power of the appellee on another trial to entirely do away with the legal effect of the evidence in question from the comptroller's office; still it has been expressly held by this court in this case (Franklin v. Tiernan, 56 Tex., 627) that this exhibit is lawful evidence, without a further explanation of the archives of the comptroller's office and of the general land office.

If it were proved beyond doubt, that in truth and in fact Hol-

man never did pay the purchase money for the lots in question, there would at once be an end of the controversy. This tabular list, duly certified to, asserts that he did, as a matter of fact, pay the purchase money. This lead pencil memorandum contained in the exhibit, by the previous decision of the court in this case, above referred to, on that point is now legal proof of the fact of the payment of the purchase money by Holman.

The evidence, though, in this case shows that there is other record testimony in the public offices of the state bearing also on this question of payment. There must, in the nature of things, be some fuller account than these mere lead pencil memoranda, introduced in evidence, to be found among the old papers and records of the secretary of the treasury of the republic of the sales of the government lots on Galveston Island. A comparison of the amount of money received from 1837 to 1839, as the results of the sales of these lots, would perhaps disclose satisfactorily whether or not the pencil memoranda of the payment of $167 told the truth or not. Again, the exhibit itself shows that it was part of a book that was kept in connection with at least one other book, which other book must in some sort have acted as a check upon the book of which the exhibit constituted a part. There must be something among the archives, some statement, some account, by which the accuracy of both the books in question could be tested. The counsel for appellee properly calls attention to the fact that the full name of the purchaser of lot 436 on this list does not appear in the book or list in question. It however appears from the records of the general land office that were in evidence that his full name was from some source ascertained, and is stated in the patent that was issued to him for the lot above named. It also appears that the lead pencil memoranda in question were made by one W. H. Sandusky, who was for many years a draughtsman in the general land office. It nowhere, however, appears in evidence as a fact, if it be a fact, that Sandusky was not, at the time he made the lead pencil memoranda in question, a clerk in the treasury department. The evidence shows that he was for many years a draughtsman in the general land office, but where, or during what years, he was such draughtsman does not appear. It may be possible that Sandusky was not authorized to make the entries in question, though this is not likely, as a large part of the book in question is in his handwriting; nor would the fact alone that he was a draughtsman in the land office when the entries were made by him, entirely discredit the book. It is possible that he may have been detailed from the land office to work temporarily on this matter in the office of the secretary of the treasury.

In short, unless it was clearly shown that Sandusky had no authority to make the entries in question, they would still be good. To sum up the matter on this point, we do not believe that all the sources of information accessible to appellee have been exhausted on the vital question in the case, of Holman's payment of the purchase money for the lots in question.

This question did not assume such importance until it was held in this case, by this court, that the lead pencil memoranda under consideration were entitled to full credence, as lawful and competent evidence of the facts they disclosed.

Holman's pecuniary condition at the date of these transactions, his failure, if in fact he did fail, to render the land for taxes and to obtain a patent on it, and many other like matters, should, if possible, be brought clearly to light, so that a jury can determine, as a matter of fact, whether or not Holman did make the payments that it is here claimed that he did make.

It may not be improper to make a remark concerning the appellant's second bill of exceptions. On another trial, if the appellant desires to use the records of the surveyor's office of Galveston county, for the purpose of showing that the lots in question were appropriated, he must produce something more pertinent to that issue than the evidence contained in the second bill of exceptions. The matters there contained are rather of a private than of a public and official character.

Any public authorized official map, or plat, or sketch, or field notes, or like records of that office, or of the general land office, tending to establish the fact that the land in question had been legally appropriated prior to 1870–71, would be admissible in evidence. We do not deem it necessary to say anything at present on the question of improvements.

We have more than once alluded to the previous decision of this court in this case on the question as to the admissibility in evidence of the lead pencil memoranda that were used on the trial.

We deem this a proper occasion in this connection to make an observation or two on the decision of this question in that case.

When that opinion was prepared, it was then stated that the court did not have access to the 24th volume of New Hampshire Reports, where the cases of Meserve v. Hicks, 24 N. H., 295, and Stone v. Sprague, 24 N. H., 309, are to be found.

The decision rested on this point alone, so far as authority was concerned, on the case of Kerr v. Farish, 52 Miss., 101. In the last named case, the question as to the admissibility and effect of the lead pencil memoranda in question, though alluded to, is not dis-

cussed, nor was any authority on the special question of the admissibility of such memoranda, in lead pencil, cited or referred to. There was also, in that case, other evidence besides the lead pencil memoranda, of the purchase by the state from Lacoste, and of the subsequent sale by the state to Kerr.

In the case of Stone v. Sprague, above cited, the very point in question is discussed in the most satisfactory manner, and a different conclusion, and in our opinion a more satisfactory one, was arrived at.

In private transactions numerous cases can be found to the effect that a writing or receipt, or the like, in lead pencil is admissible in evidence as between individuals. Many of these cases are collected in the case of Stone v. Sprague. We do not believe that any case in which the precise point has been directly made, and was seriously considered by the court, can be found, where loose lead pencil memoranda like those under consideration in this case, have been held to constitute public official records, and entitled to the same respect and consideration as if regularly entered in ink. In view, however, of the fact that the decision has already been made in this case, and of the further fact that it is judicially known to the court that many of the records of the public offices in the early and revolutionary days, when the infant republic was struggling for existence, were necessarily very loosely and carelessly kept, and entries were not in those days always made as carefully and as regularly as they can now be made, we are not disposed to enforce strictly, in such cases, the rule laid down on this subject in Stone v. Sprague, at least where the early records of the public offices of the republic are concerned. Further than this, we are not at present disposed to abide by the rule on the question laid down in this case, when formerly before this court.

The making of official entries in lead pencil, upon the records of the public offices of the state, is a practice not to be tolerated. The evil consequences likely to flow from such a course can be easily imagined.

The statute does not in so many words say that the public records are to be kept in ink, but it means it. They might as well be kept in the frail memory of man, or handed down by tradition, as to be kept in pencil.

We make these remarks with reference to the case of Franklin v. Tiernan, 56 Tex., 618, so that the decision may be hereafter limited in its operation, and no one misled by it into the belief that a mere loose pencil memorandum, that may happen to be found upon the public records of the state, will have the same effect as evidence that a

regular formal official entry or statement made in due form, and preserved permanently through the medium contemplated and intended by the law, would and should have.

The judgment is reversed and the cause is remanded.

REVERSED AND REMANDED.[1]

1. PLEADING — AMENDMENT.— The only test as to the propriety of an amendment made in the district court, in a proceeding begun in an inferior court, is, would the amendment be admitted if the cause had originated in the district court? Any new matter may be pleaded which would defeat the plaintiff's action.

2. PARTIES — HOMESTEAD — PROBATE MATTERS.— Any interested creditor may make himself a party to proceedings instituted by a surviving widow in the probate court to have property set aside to her as a homestead, and show that the property is not in fact a homestead.

3. HOMESTEAD.— Under the laws in force in 1859, the $2,000 in value of a town or city lot or lots exempted from forced sale was to be estimated by taking into consideration as well the improvements on the lots as the lots themselves. Though the homestead was then subject to sale under a trust deed conveying it during the life-time of the grantor, it could not be subjected to forced sale after his death, because inconsistent with the statutes governing the settlement of estates of deceased persons.

4. SAME.— The act of February 2, 1860, re-enacted November 10, 1866, which exempted from forced sale as homestead $2,000 in value, to be estimated at the time of its destination as a homestead, without regard to improvements afterwards made, did not enlarge the rights of the surviving widow with reference to a deed of trust conveying the homestead in 1859. To permit such a result would be to give to the act of February 2, 1860, a retroactive effect in violation of the constitution.

5. CONTRACT — HOMESTEAD — CONSTITUTIONAL LAW.— The remedy subsisting in a state when and where a contract is to be performed is a part of the obligation, and any law afterwards enacted by the state which so affects that remedy as to substantially impair and lessen the value of that contract is violative of the constitution of the United States and void. Citing Edwards v. Kearzey, 6 Otto, 595.

6. HOMESTEAD.— In April, 1859, the husband and wife executed a deed of trust on urban property. In 1868, the husband being dead, the surviving wife applied to the probate court to set aside the property to her as a homestead. Held, that in setting apart the homestead the court should have included

[1] NOTE.— The record in this case was not obtained by the reporter until too late for insertion of opinion in its proper order.