RADER et al. v. GALVESTON, H. & S. A. RY. CO.

(Court of Civil Appeals of Texas. San Antonio. May 10, 1911.)

1. APPEAL AND ERROR (§ 561*) — RECORD — MAKING CASE — CONTENTS — STENOGRAPHER'S NOTES.

Under Act 31st Leg., 1st Ex. Sess., c. 39, § 5, providing that the stenographer shall file in the office of the clerk of the court, within such reasonable time as may be fixed, his transcript of the evidence, the stenographer's transcript was never intended to be filed in the appellate court, but was to be used by the party ordering the transcript in preparing the statement of facts.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2494; Dec. Dig. § 561.*]

2. APPEAL AND ERROR (§ 614*) — RECORD — STATEMENT OF FACTS — CERTIFICATE OF JUDGE.

Where the certificate of the trial judge stated that a statement of facts was already on file in the case, and that it was signed by the counsel for all the parties, and that the same is correct, and that this certificate is approved with a certain qualification, and none of the attorneys had signed the certificate, it will be considered as a valid certificate by the trial judge, for Acts 31st Leg., 1st Ex. Sess., c. 39, did not prescribe any form, and it is evident that the parties failed to agree on the certificate, and the trial court neglected to strike out the statement that it was signed by the attorneys.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2708–2713; Dec. Dig. § 614.*]

3. APPEAL AND ERROR (§ 728*) — ASSIGNMENTS OF ERROR.

An assignment of error complaining of the exclusion of certain evidence, which does not show wherein the court erred or why the evidence was admissible, will not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3010–3012; Dec. Dig. § 728.*]

4. APPEAL AND ERROR (§ 273*)—PRESENTATION OF GROUNDS OF REVIEW IN COURT BELOW—EXCEPTIONS.

A bill of exceptions complaining of the exclusion of certain evidence is insufficient, where it does not state the grounds of the objection to the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 273.*]

5. APPEAL AND ERROR (§ 1056*)—REVIEW—HARMLESS ERROR.

Where those claiming damages from the death of a parent were allowed to show approximately the amount per annum the parent contributed to them, they cannot on appeal contend that they were erroneously required to confine their inquiries to specific amounts.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 1056.*]

6. DEATH (§ 70*)—EVIDENCE—RELEVANCY.

In an action by adult children for damages for the death of their mother, inventories of her property filed by the administrator were admissible in evidence to show what the chil-

dren inherited, and as giving a basis for the calculation of the mother's income from the property.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 89; Dec. Dig. § 70.*]

**7. DEATH (§ 95*)—DAMAGES—MEASURE.**

Damages for the death of plaintiffs' mother are to be measured by the children's pecuniary loss, and they are not entitled to damages for defendant's negligence independent of financial injury.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 108–120; Dec. Dig. § 95.*]

**8. DEATH (§ 79*)—NOMINAL DAMAGES.**

The right of action for death being of purely statutory origin, the doctrine of nominal damages has no applicability.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 97; Dec. Dig. § 79.*]

Appeal from District Court, Matagorda County; Wells Thompson, Judge.

Action by Henry Rader and others against the Galveston, Harrisburg & San Antonio Railway Company. From a judgment for defendant, plaintiffs appeal. Affirmed.

W. S. Holman, for appellants. Baker, Botts, Parker & Garwood and Proctor, Vandenberge, Crain & Lewright, for appellee.

FLY, J. In their second amended original petition, upon which pleading the cause was tried, Harvey Rader and Mrs. Virginia Fink, joined, pro forma, by her husband, W. A. Fink, seeking to recover damages for the death of their mother, Sarah Rader, alleged that she died from injuries received in the derailment of a railroad train, which resulted from the negligence of appellee.

The petition stated: "Said plaintiffs further allege: That at the time of the death of said Sarah Rader, mother of said plaintiffs, the said Sarah Rader was sound in body and mind, and was of unusual good health and unusual vigor in the transaction of her business affairs and had she not lost her life by the negligent acts of defendant, its agents and employés, would have in all probability lived at least 10 years longer. That said Sarah Rader, deceased, was of an exceedingly good business temperament and capability, and earned over and above her expenses, as net, about $1,000 per year and gave to plaintiffs large sums of money, and rendered them great financial assistance each year, the exact amount of which plaintiffs cannot state from memory, but approximately $500 per annum each. That said plaintiffs were her heirs at law, and would have inherited whatever wealth she would have accumulated had she been permitted to live, and had she not been killed by the gross negligence of the defendant, as above set forth, and by reason of said acts of defendant plaintiffs have sustained damages in the sum of $10,000 for said reason mentioned. That the advice and counsel of the said Sarah Rader to plaintiffs was very valuable to said plaintiffs in a financial way,

as she was a woman of unusual business capabilities and foresight, was exceedingly economical and conservative in her business transactions, and said plaintiffs relied upon the good counsel of their said mother in their business and financial affairs, and that said good counsel of said plaintiffs' mother was of great financial value to said plaintiffs in the probable sum of $5,000, but that plaintiffs have been deprived of same by the wanton and reckless acts of the defendant as above set forth, to said plaintiffs' damage in said sum of $5,000. Said plaintiffs allege that the mother of plaintiffs was a kind, affectionate, and careful mother to plaintiffs, and that her presence was a source of great comfort, consolation, and happiness to plaintiffs; but, by the gross negligence and recklessness of defendant, plaintiffs have been deprived of same, to their damage in the sum of $5,000."

The cause was tried by jury and resulted in a verdict for appellee.

[1] Appellants have filed in this court what purports to be a statement of facts, as well as the stenographer's transcript of the testimony, in the form of questions and answers, provided for in paragraph 5. of the Act of 1909, Gen. Laws, p. 376. The stenographer's transcript of the evidence was never intended for filing in this court; the only provision in relation thereto being that the stenographer "shall file the same in the office of the clerk of the court within such reasonable time as may be fixed by written order of the court." The duplicate copy of the testimony and other proceedings in the form of questions and answers is, of course, delivered to the party ordering the transcript, to be used by him in preparing the statement of facts provided for in paragraph 6, and cannot be considered as a part of the record in the appellate court.

[2] The statement of facts filed herein, which contains 27 typewritten pages, has appended to it the certificate of the stenographer to his stenographic report, in which he certifies "that the above and foregoing eighty pages of typewritten matter, made in question and answer form, * * * is a true and correct copy of all the testimony adduced upon the trial," etc. Why it should have been attached to the statement of facts is not apparent, and no reason for it has been vouchsafed. In addition to that certificate is an agreement that the statement contains all the facts, which is not signed by any one, and which is followed by a novel certificate from the district judge to the effect that the statement of facts was already on file in this cause, that it "was signed by the counsel for all the parties thereto, and that the same is correct." He further states: "This certificate is approved by me with this qualification that I do not recollect whether or not the admission by defendant's counsel

shown on page 9 of the statement was that 'her injuries were caused by the negligence of defendant railroad company,' or that the admission was 'her death was directly caused by injuries received by her, the said Mrs. Rader, in said railway wreck." It is evident from portions of the intended agreement, afterwards stricken out, as well as the certificate for the judge to sign, that the so-called statement of facts was written with a view to making an agreed statutory case, and it may be it does not purport to be a statement of all the facts proved on the trial, and the trial judge does not so certify.

What the certificate of the trial judge shall contain is not provided for in the law of 1909, and, while it is evident that neither of the parties signed the statement of facts, the judge certifies that it "was signed by the counsel for all the parties thereto," and this can only be accounted for on the hypothesis that the judge neglected to strike that statement from the typewritten certificate presented to him. We will therefore take it for granted that the parties did not agree to the statement of facts, and that the judge intended the statement of facts as one made out by him. While it is extremely doubtful that a certificate of the judge that a statement of facts is correct is sufficient, still, as no form of certificate is prescribed by the statute or rules, and it has not been stated by appellee that the statement contains the material facts proved on the trial, we have concluded to consider it, giving the benefit of any doubt we may have to the right of appeal.

We conclude that Mrs. Sarah Rader died from injuries received by the derailment of a train, belonging to appellant; on which she was a passenger, but further conclude that appellants failed to prove that they incurred any pecuniary damage by her death. Harvey Rader was an adult in the furniture business, and the husband of Mrs. Fink was 45 years old and engaged in the lumber business.

[3] The first assignment of error assails the action of the court in excluding a statement made by C. A. Lewis to his sister, Mrs. Balt, just prior to the wreck that, "If the engineer who was operating the train did not put us in the ditch before we got to Devil's river, we could be in luck." Appellant does not state, nor attempt in any manner to show, wherein the court erred, nor why the language quoted should have been admitted in evidence, and for that reason, if no other, the assignment of error does not merit consideration.

[4] However, if the matter were properly presented in the brief, it could not be considered because the bill of exceptions upon which it is based does not state the grounds of objection to the evidence. It has long been the rule in this state that the bill of exceptions and the brief should both indicate objection overruled or sustained to the introduction of evidence. Hagerty v. Scott, 10 Tex. 525; Whitehead v. Foley, 28 Tex. 268; Johnson v. Crawl, 55 Tex. 571; Underwood v. Coolgrove, 59 Tex. 165; Lockett v. Schurenberg, 60 Tex. 610; Endick v. Endick, 61 Tex. 559; Franklin v. Tiernan, 62 Tex. 92; Railway v. Gage, 63 Tex. 568; Kolp v. Specht, 11 Tex. Civ. App. 685, 33 S. W. 714; Cunningham v. Holt, 12 Tex. Civ. App. 150, 33 S. W. 981; Schoch v. City of San Antonio, 57 S. W. 893.

The second assignment of error cannot be sustained, because the witness Abbie Balt did testify that the train was going unusually fast at the time of the derailment, that it was going faster than usual, and that it jerked her around, which was in effect that it was running at an excessive rate of speed. Really that fact was not contested, and it was fully testified to by the witness Lewis.

[5] The third assignment complains of appellants' having been required to confine their inquiries to specific amounts which were contributed to them by Mrs. Sarah Rader; but by the assignment of error itself it appears that appellants were allowed to prove all about the contributions. The statement of facts shows that the witness Fink testified fully as to what Mrs. Rader gave his wife, so far as he said he could. He testified: "Mrs. Rader, during the time of her life, was contributing things of value and sums of money to my wife. I cannot tell positively just how much she gave every year." Appellant asked the question, "Approximately how much per annum?" and the bill of exceptions indicates in one place that the witness answered the question, and when it was repeated it does not appear what the answer would have been. The assignment of error is utterly without merit.

[6] It is stated in the proposition under the fourth assignment of error that "the copies of the inventories filed by Harvey Rader, as administrator of the estate of Mrs. Sarah Rader, and the inventories of the property shown by assessments of Mrs. Sarah Rader in the office of the tax assessors of De Witt, Lavaca, and Wharton counties, are inadmissible to show the income and are irrelevant and inadmissible for any purpose whatever." Why they were inadmissible appellant does not attempt to show either in the bill of exceptions, the assignment of error, or the proposition. There is merely a bare assertion of error, without any effort to designate it to the court. It is clear that the inventories were not objected to because they were copies because in the argument underneath the proposition no reference is made to that feature, and we infer, therefore, that irrelevancy is the basis of the objection. We think the evidence was relevant as tending to show what appellants inherited on the death of their mother. It was also relevant as giving a basis for a calculation of the income Mrs. Sarah Rader probably received

from the property. Appellants had sought to show that Mrs. Rader not only supported herself but contributed to the support of her children, and, as it was apparent that all the property she had was comprised in the inventories, it was material to show what it was, and thereby fix a basis for arriving at the probable income from it. The valuation of the property as placed upon it by Mrs. Rader and appellant Henry Rader was $4,775, only a small portion of which brought any income. The only money she had when she died, which amounted to $200, came from the sale of two lots in East Bernard, and at least a portion of that was used to bury her.

[7] The evidence justifies the conclusion that all the income received by Mrs. Sarah Rader was from certain property which was inherited by the appellants, and that they would receive the whole of the income from it, instead of what Mrs. Rader saw proper to give them out of the income. The evidence not only failed to show that appellants, who were adults, had suffered any damages from the death of Mrs. Sarah Rader, but rather that they had been financially benefited by it. This may be a cold-blooded manner of looking at the death of a parent, but it is the law's way of looking at the matter in this class of cases, for the only damages allowed are those arising from a loss in dollars and cents. Railway v. Johnston, 78 Tex. 536, 15 S. W. 104.

The fifth and sixth assignments of error, which seek to attack the verdict, are too general for consideration; but they have been answered, however, by our conclusions as to the facts. It does not matter that the death of Mrs. Rader was caused by the negligence of appellee; unless appellants were damaged financially by her death, they are not entitled to compensation. One of the appellants was a married woman and the other an adult man, who had not lived with his mother since 1895. He was engaged in the furniture business. He stated that his mother had made him gifts once or twice in her lifetime. Her last gift to him seems to have been made quite a while before her death. If Mrs. Sarah Rader had given to her children the money they stated she did, she must have given it all, because she had at her death only $200, and that had been obtained by the sale of real estate. They could not have obtained anything more from her, unless by selling the real estate, and her death did not cut off that opportunity of realizing money.

The charge of the court presented the law applicable to the facts, and set forth the proper measure of damages.

[8] The doctrine of nominal damages has no applicability in cases of damages arising from death, which are purely statutory actions. Railway v. Gormley, 27 S. W. 1051;

McGown v. International & G. N. Ry. Co., 85 Tex. 289, 20 S. W. 80.

The evidence in this case shows that Mrs. Rader was 67 years old when she died, that her daughter had a husband in the lumber business, and her son, a man 35 years of age, unmarried, was in the furniture business. It cannot be a subject of surprise that the jury failed to understand that appellants sustained any pecuniary loss from the death of the old woman who, instead of supporting, should have been supported by her children. Her income was a mere pittance, not enough to support her comfortably, and to obtain money she had sold a portion of her real estate. When she had the $1,000 in cash, it brought only $100 per annum in interest, and the principal must have been spent by Mrs. Rader for her support, or absorbed by her children, for it was gone when she died.

The judgment is affirmed.