Statement of the case.

BELLE MARBLE ET AL. v. C. H. FIFE.

1. TAX-TITLE. *Act of February* 22, 1890. *Constitutional law.*

The act of February 22, 1890 (Laws, p. 16), required the auditor to list all lands held by the state under tax-sales, and certify the same, with the amount of taxes due, to the chancery clerks of the respective counties; the clerk, sheriff and president of the board of supervisors in each county being required to make the list conform to the records and assessment-roll therein. Then the sheriff was required, if the taxes were not paid or the land redeemed, to advertise and sell the same the first Monday in October, 1890, such sale to vest an indefeasible title, saving to those under disability the right to redeem. This act is constitutional, and a sale made in pursuance of it for taxes due, vested in the purchaser a perfect title.

2. SAME. *Assessment. Sale for taxes due.*

This is true, although the assessment under which the land was originally sold to the state was void, and, besides, the description was such that part of the land was omitted therefrom entirely. Notwithstanding this, as the land was afterwards, and before the last sale, placed on the assessment-roll and valued, and so described as to identify it, this met the constitutional requirement of an assessment, and it was competent for the state to proceed, as was done by the act of 1890, and sell the land for the taxes due thereon.

FROM the chancery court of Warren county.

HON. CLAUDE PINTARD, Chancellor.

In the year 1877 Frank Walker died intestate, leaving a widow and children, the appellants in this case. At the time of his death he owned, and was living upon, the north ½ of lot 11, square 1, Springfield, in the city of Vicksburg, and his widow and children have lived there ever since, this being the only land owned or claimed by them or the said Frank Walker in the city of Vicksburg. On the assessment-roll of Warren county there was assessed to Frank Walker the *west* ½ of said lot 11. Up to 1880 the taxes were paid, but for that year they were not paid; and on March 7, 1881, the tax-col-

lector of Warren county, without changing the description on the roll, advertised and sold the north $\frac{1}{2}$ of said lot, and the same was struck off to the state, and the sale certified to the auditor. Thus, the east $\frac{1}{2}$ of said north $\frac{1}{2}$ of lot 11 was omitted entirely from the assessment-roll of 1879. The south $\frac{1}{2}$ of said lot 11 is the property of the Shannon heirs, the taxes upon which have always been paid. After the sale of said north $\frac{1}{2}$ of the lot in 1881, it was assessed to the state on the land-roll of Warren county, and remained so assessed until 1883, when it was assessed to the state as the west $\frac{1}{2}$ of the lot. After this, in 1884, the tax-collector corrected this on the roll so as to show that the land was assessed to the heirs of Frank Walker as the north $\frac{1}{2}$ of lot 11. The heirs paid the taxes thereon for the years 1884, 1885 and 1886, when the tax-collector discovered that the land was held by the state, and on the assessment-roll of 1887 it was assessed to the state.

Under the act of February 22, 1890 (Laws, p. 16), the auditor of the state prepared a list of lands held by the state for taxes in Warren county, and certified the same to the chancery clerk of that county: Upon this list the land in controversy was correctly described as the north $\frac{1}{2}$ of lot 11. The assessment being found correct by the sheriff, clerk and president of the board of supervisors, the land was certified to the sheriff, who, on the first Monday of September, 1890, advertised the same for sale, and, not being redeemed, on the first Monday in October, 1890, it was sold by the sheriff for the taxes due thereon, in pursuance of said act of 1890, and purchased by the appellee, C. H. Fife, who received a deed therefor, and who thereupon filed this bill to confirm his title. The widow and heirs of said Frank Walker were made parties defendant, and they answered the bill, denying that complainant had acquired a title to the land by the alleged purchase, and asserting title in themselves.

It was set up in the answer that when the land was sold

for taxes, in 1881, it was erroneously assessed as the west ½ of lot 11, and that there was never any correction of the assessment-roll before said sale. It was also averred that the assessment-roll of Warren county for 1879 was void, because not returned to and approved by the board of supervisors of the county at the proper time, and that there never was any valid assessment of the land.

The cause was heard on bill and answer and an agreed statement of facts, substantially as above, and a decree was entered in favor of complainant, from which the defendant appealed. One of the defendants being a minor, his right to redeem was provided for in the decree. The opinion contains a further statement of the case.

The act of February 22, 1890, made it the duty of the auditor to prepare a list of lands held by the state for taxes, and to certify the same, with the amount of taxes due thereon, to the chancery clerks of the respective counties. The clerk, upon receipt of the list, was required to notify the sheriff and president of the board of supervisors of the county, and, together, it was made their duty to correct the list and make it conform to the records and the assessment-roll of realty in the county. Thereupon, the list was required to be furnished to the sheriff, who was directed on the first Monday in September to advertise the land for sale for one month, and to sell the same on the first Monday in October for the taxes due thereon. It was provided that the person against whom the land had originally been assessed and who was in default, might pay all taxes, damages and costs and redeem the land before sale. The sheriff was required to execute deeds to individual purchasers, and, if the amount of taxes, damages and costs due on any piece of land was not bid by the individual, he was required to strike off the same to the state. Section 6 of said act is as follows: "That said sales, when so made by the sheriffs, whether to individuals or to the state of Mississippi, shall vest and convey absolute title to said lands, and it shall not hereafter be competent to impeach the titles of

individuals or the state, on account of any irregularity in former sales, or on account of any vague or indefinite description or informality or illegality of assessment, or for any other reason whatsoever that may have existed prior to said sale herein provided for."

Section 7 preserves the right of redemption after the sale in all cases where such right did not previously expire, and the act also saved to minors and persons *non compos* the right to redeem.

*Anderson & Russell*, for appellants.

The statute of 1890 is simply a retroactive curative act. It is, in effect, so designated in the title and in § 3. It provides no new proceedings, and, if intended to divest title, it is unconstitutional. One of the essentials of the constitutional provision that no one shall be deprived of property without due process of law, is that the tribunal seeking to divest title must have jurisdiction of the owner. He must have his day in court or a chance to be heard. This statute makes no provision for any thing of the kind. The owner was not to be notified. It is true he had the right to redeem prior to the sale, but he already had the right to purchase the land by paying every thing that this act required, and it did not propose to hold the land, to the date of sale, subject to redemption. Any person had the right to purchase it from the auditor prior to the sale. See § 3.

This is unlike a sale under the abatement act of 1875, which was held constitutional in *Cochran* v. *Baker*, 60 Miss., 282, and *Cato* v. *Gordon*, 62 *Ib.*, 373. Under the abatement act, previous taxes were abated, and general notice was given former owners of their rights under the statute, and they were allowed to redeem within one year after the sale.

This being a retrospective curative act, it could not validate the void assessment of 1879 so as to divest appellant's title.

As to the east ½ of the lot, there can be no controversy. It was never assessed at all, and, therefore, the state had no

shadow of title to it. The act of 1890 could not cure or legalize something that had no existence. Defendants had a complete title to this land, and could ignore the state's claim.

In the case of *Tierney* v. *Brown*, 67 Miss., 109, this court decided that the land assessment-roll of Warren county for 1879 was void. Being void, it was not competent for the legislature, by the act of 1890, to validate a sale made under it. *Dingey* v. *Paxton*, 60 Miss., 1038. That case is decisive of this.

In all cases where retrospective curative acts are held constitutional, there must be either a new proceeding, as in case of the abatement act of 1875, or one of the essentials of a complete title, as defined by Blackstone, must be lacking. Here there was no new proceeding, and appellants had all the essentials of a complete title—namely, the possession, the right of possession and the right of property.

*Gibson, Henry & Bien,* for appellee.

The land was properly dealt with under the act of 1890, and appellee obtained a good title. *Green* v. *Anderson,* 39 Miss., 359; *Vaughan* v. *Swayzie,* 56 *Ib.,* 704; *Cochran* v. *Baker,* 60 *Ib.,* 282; *Cato* v. *Gordon,* 62 *Ib.,* 373.

CAMPBELL, C. J., delivered the opinion of the court.

There is no valid objection to "An act to facilitate the sale of lands held by the state," etc., approved February 22, 1890 (Laws, p. 16), as applied to the facts of this case. The land was properly described (so as to identify it) and valued on the assessment-roll of the county from 1884 on, and it was paid on for 1884, 1885 and 1886. On the roll of 1887 it was described as the property of the state, and, because of that, was not paid on, as it should have been. The act cited was intended as a means of investing the state, or any purchaser, with a title to such lands as are described in the act, if not redeemed before sale, as the result of dealing with them in pursuance of its provisions. It is not denied that the lot in

dispute was embraced by the terms of the act, and it is admitted that it was dealt with as prescribed by the act, whence it results that the sale was valid, and the decree of the court sustaining it is

*Affirmed.*

*Anderson & Russell,* on behalf of appellants, filed a suggestion of error, containing the following points:

1. The court seems to have misapprehended the facts of this case. The land was sold under the assessment of 1879, and was never sold to the state at any other time; so, whatever title the state had, it derived through that sale, under an assessment which was void. It is immaterial that the land was correctly described on the assessment-roll of 1883, and that the taxes were paid for the years 1884, 1885 and 1886. If it belonged to the state in 1887, appellants were not required to pay the taxes thereon for that and subsequent years, and their paying, or failure to pay, could not give the state a better title than it previously had. •

2. The act of 1890 did not embrace lands that had not been previously sold to the state for taxes. As the land in question had never been sold but once, the only title the state could possibly have was that acquired at that sale. The subsequent assessment and failure to pay taxes could not vest title in the state so as to bring the land within the terms of the act of 1890.

3. If the court considers the contention of appellant's counsel to be unworthy of consideration, then we respectfully submit that *Dingey* v. *Paxton,* 60 Miss., 1038, should be expunged from the reports, and the court should declare that the constitutional question there contended for cannot have effect in future. If, on the other hand, the court failed to appreciate the contention of appellants, we beg that it will carefully consider the points made.

4. It is not contended that the provisions of the act of 1890 were not followed by the officers in dealing with the land, but

·we deny that it was within the terms of the act, or that the appellee became vested with the title.

5. The act does not provide a new assessment, or any thing that is tantamount to it. One of the chief essentials is that the owner shall have an opportunity to be heard. As to the east half of the lot there was never any assessment at all. It was not even on the void assessment of 1879. That assessment was not voidable merely, but void, and all titles derived thereunder are void. Without a new proceeding, no right could be acquired. If the act of 1890 was intended as a curative act, then it is unconstitutional.

The rule announced by the court is a harsh one, and amounts almost to confiscation. In tax-sales, the utmost liberality should be shown the citizen.

*Per curiam.*

The argument of counsel was read in the consultation-room, and fully understood and *appreciated* by the judges, who did not misunderstand the facts, or suppose that there was any sale to the state except that under the assessment of 1879. . The fact that the land was on the assessment-roll of 1883 by proper description, after the correction, and on the roll of 1887, was adverted to show that it *was assessed,* which is a constitutional requirement; and it was competent for the state to proceed under the act of 1890, as was done, and by a sale to convey title. The case was well argued, and the arguments and the case received full consideration, and, in deciding it, we wrote all that we desired to say of it, and make this statement only to assure the counsel who complain that their suggestion of error has had respectful consideration, and that there is no error in our decision, which is adhered to with the opinion as written.

*Denied.*