

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN 11

GROVER SELLERS
ATTORNEY GENERAL

Honorable Weaver H. Baker, Chairman
State Board of Control
Austin, Texas

Dear Sir:                              Opinion No. 0-7005

Re: Authority of Board of Insurance
Commissioners under the provisions
of S. B. 233, Acts 1945, 49th
Leg., R. S., with respect to in-
creasing rates under which the
Board of Control now has con-
tracts for security bonds of its
members.

Your letter of December 17, 1945, requesting an opinion
on the effect the provisions of S. B. 233 passed by the 49th Leg-
islature will have on the contract you now have with Central Surety
and Insurance Corporation for the execution of such surety bonds
on the members of the Board and other employees has been received
and given careful study. We quote below portions of your letter:

"On September 25, 1944, the Board of Control exe-
cuted a contract (a copy of which is attached) with
Central Surety and Insurance Corporation, whereby
said Corporation contracted and agreed to execute the
Surety Bonds on the Members of the State Board of
Control, Secretary to the State Board of Control and
the Superintendents and Storekeeper-Accountants of
the various Eleemosynary Institutions of the State
of Texas under the supervision of the said Board of
Control for a period of two years beginning September
25, 1944. This contract has been fully performed on
the part of both parties thereto and both parties
are now willing to abide by the terms of the said
contract.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Hon. George B. Butler, page 2

"If your answer to the proceding inquiry is in the affirmative, may the Board of Insurance Commissioners lawfully refuse to approve a proposed plan and agreement on the sole ground that such proposed plan and agreement provides that the mortuary funds belonging to the association may be disbursed for all of the three purposes specified in the preceding inquiry and compel said association and reinsuring corporation to agree that the mortuary funds shall be disbursed for only one or two and not all of such specified purposes or for some other or different purpose before the Board will give its approval as provided in said Statute."

Sec. 2, Art. 5068-3, V. A. C. S., reads as follows:

"The sums of any mortuary funds belonging to such association shall thereafter be effectually the property of such organized and converted corporation or corporation reinsuring the membership of such association, but may be disbursed for payment of valid claims outstanding and arising thereafter from policies issued by the legal reserve company to the members of the assessment association under the approved agreement; to set up the legal reserve on new policies issued by the legal reserve company to the members of the assessment association under said agreement; and to pay their actuarial portion of such mortuary fund to members of such association who refuse to accept the new policies offered them, and who make request therefor within sixty (60) days from the date of conversion or reinsurance."

It will be observed that the provisions of Section 2 are plain and unambiguous and where a statute, civil or criminal, is expressed in plain and unambiguous language and its meaning is clear and obvious, there is no room for construction. Gaddy vs. First National Bank, Beaumont, 283 S. W. 472; Sparks vs. State, 174 S. W. 351.

We therefore answer your first question in the affirmative.

In connection with your second question, we call your attention to the case of the Board of Insurance Commissioners of Texas vs. Guardian Life Ins. Co. of Texas, et al, 180 S. W. (2d) 906, wherein the Supreme Court of Texas said:

Paragraphs two and three of the contract you have with Central Surety and Insurance Corporation are quoted below:

"The Party of the Second Part hereby contracts and agrees to execute the surety bonds on the members of the State Board of Control, the Secretary to the State Board of Control, and the Superintendents and Storekeeper-accountants of the various Eleemosynary Institutions of the State of Texas, under the supervision of the Board of Control, as required by statute as and when their present bonds expire, or new ones are required, for a period of two years beginning September 25, 1944. It is agreed and understood that should surety bonds be required by law of other employees of the State Board of Control or the various Eleemosynary institutions during the time covered by this contract, the Party of the Second Part agrees to execute them. This is in accordance with the specifications and bid proposal as submitted by the Party of the Second Part and opened by the Party of the First Part on September 25, 1944, and said specifications and bid proposal are hereby made a part of this contract for all purposes.

"In accordance with the provisions of the bid submitted by the Party of the Second Part, the Party of the First Part hereby contracts and agrees to pay to the Party of the Second Part Two ($2.00) Dollars per thousand per annum for the various fidelity bonds to be executed by the Party of the Second Part. In case the Legislature should provide that premiums may be paid for two years in advance, the Party of the Second Part agrees that the premium shall be Three and Seventy Hundredths ($3.70) Dollars per thousand for the two year period. The Party of the Second Part agrees to submit to the proper institution, or the Board of Control as the case may be, a statement for the premium of each bond, executed in triplicate and accompanied by an affidavit as required by law.."

It will be noted that the effective period of the contract is from September 25, 1944, to September 25, 1946. There appears to be no question as to the validity of this contract at the time it

was signed September 1944. The question, then, is, what effect Senate Bill 233 has, if any, upon the validity or legality of the contract.

It is our opinion that the effect of Senate Bill 233 is to make illegal the execution of bonds thereunder at the rates therein stipulated after the effective date of the newly established rates by the Insurance Board. After such date, bonds may be made at the new rates for the reason hereinafter stated.

The conclusion is predicated upon the rule that where a contract is executed which is valid at the time of its execution but by reason of subsequent change in the law - whether by statute or valid administrative orders making the further subject matter of the contract illegal, it operates as a discharge of the contract as executed.

Corpus Juris Secundum, Vol. 17, p. 964, Sec. 467, declares:

> "Performance of a contract cannot be compelled where it would involve a violation of law. Hence a contract is discharged where after it has been entered into, the performance is made unlawful."

The text is supported by numerous cases including Federal decisions and others from the highest courts of the States of Arkansas, California, Delaware, Georgia, Illinois, Indiana Maryland, Mississippi, New Hampshire, New York, Texas, West Virginia, and Wisconsin. In the pocket part supplement, there are included other cases from the States of Pennsylvania, Rhode Island and Wyoming.

Buie vs. Porter, 228 S. W. 999, the Texas case cited by the text quotes Ruling Case Law as follows:

> "One of the conditions implied in a contract is that the promisor shall not be compelled to perform if performance is rendered impossible by an act of the law. The inference is that the parties did not contemplate that damages should be paid for non-performance in the event that performance was subsequently prohibited by law. The decisions of practically all jurisdictions are to the effect that where a contract, legal in its inception, becomes

illegal by subsequent statutory enactment, the
contract is wholly terminated as soon as the
statute takes effect, even though the time speci-
fied for its performance has not yet fully expired,
and no action can be maintained by either party for
failure to perform the obligations of the contract
after the illegality has attached."

In Louisville and Nashville Railroad Company vs.
Mottley, (U. S. )55 Law. Ed. 297, it is said:

"This impossibility of enforcement exists
whether the agreement is illegal in its inception,
or whether being valid when made, the illegality
has been created by a subsequent statute."

The language was a quotation from Pommeroy on con-
tracts. The Supreme Court further approving Pommeroy quoted
one of his supporting citations, Chief Justice Lord Ellenborough,
who said: "That no contract can properly be carried into effect
which was originally made contrary to the provisions of law, or
which, being made consistently with the rules of law at the time,
has become illegal in virtue of some subsequent law, are proposi-
tions which admit of no doubt." Justice Harlan then further
quoted Judge Cooley upon the constitutional provision prohibiting
legislation impairing the obligations of contracts, as follows:

"But the act to regulate commerce is a
general law, and contracts are always liable to
be more or less affected by general laws, even
when in no way referred to . . . But this inci-
dental effect of the general law is not under-
stood to make it a law impairing the obligation
of contracts. It is a necessary effect of any
considerable change in the public laws. If the
Legislature had no power to alter its police laws
when the contracts would be effected then the most
important and valuable reforms might be precluded
by the simple device of entering into contracts
for the purpose. No doctrine to that effect would
be even plausible, much less sound and tenable."

In Brown Bros. vs. Merchants Bank (N. Y.) 213 New York
Supplement, 146, it is said:

"Contracts made with reference to a subject
within the restricted power of a government contain

the implied condition that a change in law may be made and the obligations of the parties varied or avoided. Fitts v. Andrews, 192 App. Div. 160, 182 N. Y. S. 464; Town of North Hempstead vs. Public Service Corp., 231 N. Y. 447, 450, 132 N. E. 144; Legal Tender Cases, 12 Wall, 457, 551 (20 L.Ed. 287). 'The obligation of the law qualifies, and in case of conflict, overrides, the obligation of the contract.' Postal Tel. Cable Co. v. Associated Press, 228 N. Y. 370, 375, 127 N. E. 256. 'Contracts must be understood as made in reference to the possible exercise of the rightful authority of the government.' Louisville & N. R. Co. v. Mottley, 219 U. S. 467, 482, 31 S. Ct. 265, 270, 55 L. Ed. 297, 34 L. R. A. (N. S.) 671. The rights of the parties relative to the certificate to be signed, being subject to government restriction, could not be removed from such restriction by a contract contrary to the law. Hudson County Water Co. v. McCarter, 209 U. S. 349, 357, 28 S.Ct. 529, 52 L. Ed. 828, 14 Ann. Cas 560; People ex rel. City of New York v. Nixon, 229 N. Y. 356, 359, 128 N. E. 245. When the new law became operative, the parties were relieved from performance in that manner, for, without fault on the part of either, both were disabled from performing. Adler v. Miles, 69 Misc. Rep. 601, 126 N. Y. S. 135; People v. Globe Mutual Life Ins. Co. 91 N. Y. 174."

This decision was affirmed by the Court of Appeals, the highest jurisdiction in New York. We have found no case holding to the contrary. It is proper, however, under the authorities, to sever the illegal portion of the contract where the nature of the contract makes such matter severable and to enforce the contract as to that portion remaining legal after such severance.

We understand the corporation is agreeable to this being done and is willing to write fidelity bonds under the

contract for the remainder of its term at the Board's pre-
scribed rates (very naturally since the prescribed minimum
rates are higher than the contract rates) and we think it
is within your authority to permit it to do so for the re-
mainder of the life of your contract.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By:

Ocie Speer,
Assistant.

OS:rt

APPROVED FEB 14, 1946

FIRST ASSISTANT
ATTORNEY GENERAL

THIS OPINION
CONSIDERED AND
APPROVED IN
LIMITED
CONFERENCE